DORA O. SHERRIFF *vs.* MAYOR OF REVERE & others.[1]

Suffolk.   December 5, 1968. — January 3, 1969.

Present: · WILKINS, C.J., CUTTER, KIRK, SPIEGEL, & REARDON, JJ.

*Municipal Corporations,* City clerk, Mayor, Employees.

In a city having a Plan B form of government and an ordinance providing that the "city clerk's department shall be under the charge and control of the city clerk," the mayor did not have the power to discharge an employee in that department.

PETITION filed in the Superior Court on October 7, 1966.

---

[1] George V. Colella, mayor; Josephine M. Dunlea, city auditor; and Joseph M. McChristal, city clerk. A "brief for respondents" has been filed. We do not treat this as expressing the views of the respondent city clerk, as his position as revealed in the record is at variance with that of the mayor.

The case was heard by *Hennessey*, J.

*Gary T. Gilbert* for the petitioner.

*Ralph F. Martino*, City Solicitor, for certain respondents.

WILKINS, C.J.   The petitioner brings this petition for a writ of mandamus against the mayor, the city auditor, and the city clerk of Revere.   The prayers are to order the city clerk to restore the petitioner to her position as clerk-stenographer in the city clerk's office; to order the mayor to cancel his purported termination of her appointment, which had been made by the city clerk;   and to order the city auditor to approve payroll requisitions by the city clerk containing a request for the payment to the petitioner at the established rate of compensation for the services she may perform under her appointment.

The trial judge made findings and rulings and an order dismissing the petition.   The petitioner appealed.   G. L. c. 213, § 1D.   The evidence is reported.

The judge found that the petitioner was a noncivil service worker originally appointed by the city clerk;   that her services were curtailed by reason of the fact that funds were not made available to compensate her.   He ruled that funds were not, and are not, available by reason of the mayor's lawful exercise of his functions, "and at all times" he "has acted lawfully herein as chief executive officer of the city."

The judge's findings are so meager that we ourselves must make additional findings to present an intelligible statement of all the facts necessary to a determination of the issue on appeal.

At the time of the trial the respondent McChristal had been city clerk for twenty-nine years.   During the twenty-four or twenty-five years prior to January 3, 1966, he had in his office as city clerk three clerk-stenographers, two of whom were exempt from civil service under G. L. c. 31, § 5. On January 3, 1966, he was notified by the city retirement board that one of the clerk-stenographers who were exempt from civil service had been granted a superannuation retirement allowance.   On that date, which was the last

day of his term as acting city manager, the respondent McChristal requested the petitioner, who had been a secretary in the city manager's office, to work in the city clerk's office as clerk-stenographer. Also on that date the city began to operate under a new charter, namely Plan B (G. L. c. 43, §§ 56–63) and the respondent mayor took office.

At some time in January, 1966, the mayor requested the city clerk to discharge the petitioner. The city clerk refused. The mayor stated that he intended to delete one clerk-stenographer in his submission of the budget. This he did on February 14. On January 26 the mayor wrote the petitioner that on January 31 her services would be terminated. On February 1 he wrote the city auditor that her services had been terminated the day before.

The parties state that the issue is, "Does the Mayor, under the Plan B form of municipal government, have the authority to discharge a subordinate employee of the city clerk?"

The respondents, who have the affirmative of the proposition, cite § 58 of the Plan B charter (G. L. c. 43), which provides, "There shall be a mayor, elected by and from the qualified voters of the city, who shall be the chief executive officer of the city." Finding no controlling provision in any statute or ordinance, they claim they are supported by a general statement in *Dooling* v. *City Council of Fitchburg*, 242 Mass. 599, 601, to the effect that numerous sections of Plan B "disclose the plain aim to centralize executive authority and administrative responsibility in the mayor and to confine the city council to legislative functions." In *Rollins* v. *Salem*, 251 Mass. 468, 471, a taxpayers' suit to enjoin an expenditure, it was again said with reference to § 58, "The mayor's duties are primarily executive and administrative. He is the executive head of the municipality and has general supervision of all departments of the city government." The respondents omit citation of *Duggan* v. *Third Dist. Court of E. Middlesex*, 298 Mass. 274, 280, where it was said of the mayor's powers under Plan B, "The plan is silent as to any specific power

Sherriff *v.* Mayor of Revere.

which he may have to remove subordinate officers who
are under the charge of the heads of various departments."
This quotation does not support the respondents' con-
tention that it is inherent in the mayor's power of super-
vision that he can "appoint and remove subordinate
officers and employees of the various departments over
which he has supervision."

The issue does not involve the division of powers between
the mayor and the city council. It is nowhere stated that
the mayor has supervision over the office of the city clerk
to the extent of choosing its employees. All implications
are to the contrary. By G. L. c. 43, § 18 (3), it is provided,
in material part: "The council shall, by a majority vote,
elect a city clerk to hold office for three years and until his
successor is qualified. He shall have such powers and
perform such duties as the council may prescribe, in addi-
tion to such duties as may be prescribed by law. He shall
keep the records of the meetings of the council."

The Revised Ordinances of Revere (1953)[1] provide:
"The city clerk's department shall be under the charge
and control of the city clerk" (§ 2–32). "[H]e shall be
elected by the city council" (§ 2–33). "The city clerk
shall perform such duties as are prescribed by law or ordi-
nance. He shall have the care and custody of the city records,
and of all documents, books, maps, plans and papers of the
city which do not pertain solely to any other department
of the city or respecting the care and custody of which no
other provision is made. He shall keep all such records and
documents in his sole custody, and shall in no case, except
upon summons . . . cause or permit any such records or
documents to be removed therefrom. . . ." (§ 2–34).

We observe no pertinent significance in the fact that
§ 2–37 of the Revised Ordinances[2] creates the office of

---

[1] Ordinances enacted while Revere had another charter remain in effect
until explicitly changed. G. L. c. 43, § 4. *Allen* v. *Cambridge*, 316 Mass.
351, 353.

[2] § 2–37. "There shall be an assistant city clerk for the city. The assistant
city clerk shall be appointed by the city clerk and shall hold office during
the term of the city clerk, unless sooner removed."

assistant city clerk and requires that he be appointed by the city clerk, but makes no provision for other appointments. The ordinance was authorized by G. L. c. 41, § 18,[1] which was related exclusively to the office of assistant city clerk.

We conclude that the mayor does not have the power to discharge an employee in the office of the city clerk. To this extent there was error in the blanket ruling below that the mayor's actions were at all times legally correct.

The city clerk's duties as to city records and papers call for extreme care. They even may be in sensitive and, to some extent, confidential areas. In our opinion, it is consistent with sound public policy and more conducive to efficiency to enable the officer who is the custodian of those records and papers to appoint, and, subject to tenure and civil service requirements, to retain as the few employees in his office individuals whom he deems reliable, and to do so free from interference by the mayor under the guise of exercising supervisory powers.

The mayor can limit the appropriation in the budget to an amount sufficient to pay only two employees. See G. L. c. 44, §§ 32, 33A. But he cannot determine what one of three clerk-stenographers shall be let go. That is the prerogative of the city clerk, who must be free to make his own decision.

Certain contentions of the respondents we regard as unsound. We do not agree that in the interest of orderly procedure it would be logical to vest the appointment of all the employees of the city in the mayor's hands. We also regard, as verging upon the absurd and not easy to accept as seriously made, the argument that "[t]o permit the power of appointment or employment of help to vest solely in the head of the department would, in effect, cause chaos and lead to the possibility of the head of a department

[1] G. L. c. 41, § 18. "A city may by ordinance establish the office of assistant city clerk, and prescribe the manner of his appointment and his powers and duties." This dates back to St. 1869, c. 72. Plan B was first enacted in 1915. G. L. c. 43, §§ 56–63.

employing as much help as he desires and thereby require the mayor to include in his budget sums greatly in excess of the amounts needed to properly and efficiently operate the city government."

The order dismissing the petition is reversed. Instead, a new order is to enter for the writ to issue directing the respondent mayor forthwith to cancel his purported discharge of the petitioner as clerk-stenographer in the office of the city clerk, with costs of appeal against the respondent mayor to the petitioner. In other respects the petition is to be dismissed without prejudice.

*So ordered.*