DORIS B. BUNTE *vs.* MAYOR OF BOSTON & another.

Suffolk. December 28, 1971. — February 7, 1972.

Present: TAURO, C. J., CUTTER, QUIRICO, BRAUCHER, & HENNESSEY, JJ.

*Public Officer. Housing. Words,* "Substantial evidence," "Misconduct in office," "Rule," "Duty."

The evidence in a certiorari proceeding must be held to be insufficient as matter of law within G. L. c. 249, § 4, unless there was "substantial evidence" to support the findings of the respondent, being such evidence as a reasonable mind might accept as adequate to support a conclusion. [74]

Intentional wrongdoing is not necessary to establish "misconduct in office" on the part of a member of a housing authority within G. L. c. 121B, § 6; intentional violation of a rule or duty which is known or ought to be known by him and is of such importance that breach thereof renders him unfit to hold his office is sufficient. [74–76]

Charges of "misconduct in office" lodged against a member of a housing authority under G. L. c. 121B, § 6, concerned her conduct "in office" where the charges related to her status as a tenant in premises owned and operated by such authority. [76]

The fact that a tenant of an apartment of a housing authority, of which she was a member, continued to occupy her apartment after her income had become in excess of the allowable maximum and also requested payment of money earned by her as a member of the authority, which increased such excess, did not show "misconduct in office" within G. L. c. 121B, § 6, where there existed no rule or duty requiring over-income tenants to vacate their apartments. [77–80]

In the circumstances, a technical failure by a member of a housing
authority as a tenant of an apartment of the authority to file a
form disclosing details of her income as required by a rule of the
authority was not "misconduct in office" on her part within G. L.
c. 121B, § 6.  [80–81]

A member of a housing authority compensated on a per diem basis was
not guilty of "misconduct in office" within G. L. c. 121B, § 6, in fail-
ing, in her requests for compensation, to specify the dates covered
by the requests as required by an old rule of the authority which
had been so ignored by its members and employees as to have been
repealed by the members for every practical purpose.  [81–82]

PETITION for a writ of certiorari filed in the Superior
Court on October 8, 1971.

The case was heard by *Connolly*, J.

The case was submitted on briefs.

*Herbert P. Gleason*, Corporation Counsel, *Thomas H.
Martin & Norman C. Ross*, Assistant Corporation Coun-
sel, for the respondents.

*Edward J. Barshak & David A. Barry* for the peti-
tioner.

HENNESSEY, J.  This is a petition for a writ of certi-
orari brought by Doris B. Bunte, a former member of the
Boston Housing Authority, against the mayor of Boston
and the Boston city council.  Mrs. Bunte was, on July
13, 1971, removed from office as a member of the Boston
Housing Authority (the authority) for misconduct in
office in accordance with the procedure established for
such removals by G. L. c. 121B, § 6.  This statute pro-
vides that the mayor of a city may, with the approval of
the city council, after a hearing, remove from office be-
cause of inefficiency, neglect of duty or misconduct in
office, any member of a housing or redevelopment author-
ity appointed by such city.  All of the charges in this case
were based on misconduct in office.

The mayor found misconduct in office by Mrs. Bunte on
three of the five charges he had made against her.  He
ordered her removal from office, and a majority of the
council approved his order.  Mrs. Bunte contends in her
petition that the mayor's findings of misconduct in office
were not warranted by the evidence heard by him and the

council. The case is before us on the petition, the respondents' return, the exhibits, and a complete transcript of the evidence in the hearing held before the mayor and council.

A judge of the Superior Court, after hearing, entered findings, rulings and an order for judgment. The judge found and ruled, in substance, that the mayor's findings of misconduct in office by Mrs. Bunte were not warranted, and the judge ordered that she be reinstated in office for the balance of her term for which she was appointed and which expires on January 8, 1975. The respondents appealed to this court from his order.

In 1968, the previously existing prohibition against appointment of tenants as members of a housing authority was repealed by St. 1968, c. 271, entitled, "An Act permitting tenants in housing projects to be, at the same time, members of the housing authorities operating such projects."

Mrs. Bunte, who was a tenant, was originally appointed by the mayor to fill an unexpired term as a member in October, 1969. On February 11, 1970, the city council confirmed her appointment for a full five-year term to expire on January 8, 1975. On April 7, 1971, the mayor wrote to Mrs. Bunte informing her that he would hold a hearing on five charges against her which were there set out. Subsequently, an evidentiary hearing was held before the mayor and council. The hearing consumed thirteen days and generated a transcript of more than 3,000 pages, together with several hundred pages of exhibits. On June 18, 1971, the mayor issued findings of fact, rulings of law, and an order for the removal of Mrs. Bunte, all of which are part of his return before us.

Of the five charges made by the mayor against Mrs. Bunte, he found that two were not substantiated by the evidence. These two charges were that she received compensation for services in advance of rendering the services, and that she engaged in excessive out-of-city travel at the expense of the authority. The mayor found

that three of the charges were substantiated by the evidence, and that they constituted misconduct in office. These three charges are more particularly described elsewhere in this opinion.

1. Mrs. Bunte's argument against the mayor's findings of misconduct in office is based upon a provision in G. L. c. 249, § 4, which allows the petitioner to contend that "the evidence which formed the basis of the action complained of . . . was as matter of law insufficient." The evidence must be held to be insufficient as a matter of law unless there was "substantial evidence" to support the findings. "Substantial evidence" has been defined as "such evidence as a reasonable mind might accept as adequate to support a conclusion." G. L. c. 30A, § 1. *Boston Edison Co.* v. *Selectmen of Concord,* 355 Mass. 79, 92, and cases cited. We must not substitute our judgment for that of the mayor.

2. Mrs. Bunte argues that "misconduct in office" necessarily implies intentional *wrongdoing.* The mayor ruled to the contrary, stating that misconduct in office can be present without intentional wrongdoing. The judge ruled that Mrs. Bunte was correct in her argument. No prior decision of this court has established whether misconduct in office as used in G. L. c. 121B, § 6, can be found, as urged by Mrs. Bunte, only in the presence of the elements of intentional wrongdoing. Also, an examination of the decisions from other jurisdictions upon which Mrs. Bunte relies does not support her argument. See, e.g., *Law* v. *Smith,* 34 Utah, 394; *Kesling* v. *Moore,* 102 W. Va. 251; *Layne* v. *Hayes,* 141 W. Va. 289.

We conclude that it was the intent of the Legislature that misconduct in office can be found to exist even in the absence of evil motives, moral turpitude, corrupt or criminal conduct, or intentional wrongdoing. Consequently, we rule that the judge was incorrect in the definition which he applied, and that the mayor invoked a proper standard by which to judge the petitioner's conduct. In *Opinion of the Justices,* 308 Mass. 619, we were called upon to construe the meaning of the phrase "misconduct

and mal-administration in their offices" as used in the Constitution of the Commonwealth with reference to the impeachment of officers of the Commonwealth. We said "the word 'misconduct' as used therein include[s] acts or omissions of a councillor while holding the office of councillor that can be said reasonably to render him unfit to continue to hold the office." 308 Mass. at 629. It is significant that we made no mention of intentional wrongdoing, corruption, evil intent or similar words in thus defining the misconduct of such an officer. Although Mrs. Bunte is not an officer of the Commonwealth, she, as a member of the authority, is a public officer. *Belinfante* v. *Mayor of Revere*, 352 Mass. 712, 718.

The majority rule in other jurisdictions is that no wrongful intent need be shown. *People* v. *Harby*, 51 Cal. App. 2d 759. *Yoe* v. *Hoffman*, 61 Kans. 265. *State* v. *Leach*, 60 Maine, 58. *Matter of Sausbier* v. *Wheeler*, 276 N. Y. 246. *Law* v. *Smith*, 34 Utah, 394. *Warren* v. *Commonwealth*, 136 Va. 573. *Kesling* v. *Moore*, 102 W. Va. 251. "When an official act or omission has occurred the officer may be removed therefor without reference to the question whether it was done maliciously or corruptly." *Matter of Moran*, 145 App. Div. (N. Y.) 642, 644. " 'Misconduct' does not necessarily imply corruption or criminal intention. We think the legislature used the word in its more extended and liberal sense. This statute is not, strictly speaking, a penal statute, but rather remedial and protective." *State* v. *Leach*, 60 Maine, 58, 72.

We are in accord with the majority view, in that we believe that it would be a disservice to the public interest for us to hold that misconduct can be proved only in terms of intentional wrongdoing, for that would place upon the mayor in this or any similar case a burden in some respects equivalent to that of the prosecutor in a criminal prosecution. Public employees are, and must continue to be, held to a higher standard of stewardship than merely that of refraining from criminal actions while in office. The saying, "Public office is a public trust," is

more than mere rhetoric. *Boston* v. *Dolan,* 298 Mass.
346, 354.

In the operation of the statute before us, which pre-
dicates removal upon the proof of misconduct in office, it
is sufficient to prove that the public officer has become
unfit for office by reason of his intentional violation of a
known and significant rule or duty inherent in the obli-
gations of his office.[1]

By the terms of the statute before us, the proved mis-
conduct must be "in office." We conclude that the mis-
conduct specified against Mrs. Bunte was in office, if it
was misconduct at all, since it related to her status as a
tenant in the very premises owned and operated by the
authority, in which she held office.

In our conclusion that the rule or duty violated must be
a known rule, we are not thereby establishing that it must
be shown that the office holder had actual knowledge.
It is enough to show that the duty or rule was sufficiently
well established so that it ought to have been known to
the officer.

Necessarily, the misconduct sufficient for removal from
office must be significant, rather than unsubstantial or
trivial. The rules or duties violated must be of impor-
tance in the administration of the public office. Other-
wise stated, the rule or duty must be important enough so
that its breach renders the officer unfit to continue to hold
office. Presumably this was the issue under consideration
by the judge, when he included in his findings and rulings
the statement that "the conduct complained of did not
render her unfit to hold office." We do not reach this
issue in this case since we have decided, below, that there
was no evidence sufficient to warrant a finding of a

---

[1] We do not intend to attach a narrow meaning to our use of the
words "rule" and "duty." For example, we do not intend to exclude
consideration of intentional violations of statutes, regulations, or ordi-
nances. The emphasis here is in the necessity to establish that a known
standard of conduct was violated. Otherwise, the words "misconduct
in office" become impermissibly vague, and the risk arises that an
office holder will suffer the stigma of removal for "misconduct in office"
which was no more than an error of judgment.

violation by Mrs. Bunte of a known rule or duty, substantial or otherwise.

3. The remaining issue to be determined is whether the mayor's findings are based upon evidence sufficient as matter of law, or "substantial evidence." Of the five charges against Mrs. Bunte, the mayor found misconduct in office by her as to three of the charges, viz. (1) that Mrs. Bunte received income in 1970 in excess of the maximum income for continued occupancy of public housing, in that she earned income of $19,320 during the year and the maximum allowable annual income for her housing accommodation was $6,500; (2) that a Tenant Status Review Form accurately reflecting Mrs. Bunte's income for 1970 had not been filed with the authority; and (3) that Mrs. Bunte claimed and received compensation for services in 1970 to the authority otherwise than in accordance with law and the procedures of the authority, in that she did not indicate on her requests for compensation the dates for which compensation was claimed.

We conclude, as to all three charges, that misconduct in office cannot warrantably be found. As to charges (1) and (3) above, we conclude that there was no substantial evidence of the existence of a known duty or rule as alleged in those charges. As to charge (2) above, we conclude that there was no substantial evidence of a breach of a duty or rule by Mrs. Bunte.

4. The finding of misconduct in office by reason of Mrs. Bunte remaining in an apartment of the authority despite her over-income statute, charge (1) above, cannot stand because there was no evidence that any rule or policy of the authority required over-income tenants to vacate their apartments.

It is not material that reasonable men might conclude now, in retrospect, that there should have been such a rule or policy, since the evidence on this point was uncontradicted that neither the authority nor the Federal financing agency required the removal of over-income tenants. Testimony of officials of the authority and the Federal agency gave the reasons for the absence of such

a rule. They also testified to the consistent practice of permitting such tenants to remain in occupancy. The evidence shows that Mrs. Bunte had no part in establishing this practice or policy, which came into existence at least two to three years before she became a member of the authority. There is no issue before us concerning the wisdom of that practice or policy, or whether it is in the best interest of the public, and particularly that segment of the low-income public who seek to enter public housing as tenants.

Evidence from officials of the authority and the Federal agency showed that the authority is subject to Federal laws and regulations. The authority sets certain eligibility income standards for applicants for entrance into tenancy and also sets standards and policies relating to tenants whose incomes have grown beyond the initial eligibility amounts. Between 1966 and 1967, the authority established the consistent practice that over-income tenants would not be evicted. Instead they would be allowed to remain in occupancy provided they paid the maximum rental applicable to their quarters. This practice was not in violation of any Federal law or rule, and met with the approval of Federal administrators. This practice was followed in order to provide badly needed additional income for the authority by means of charging the maximum allowable rents, and in order to provide some degree of "economic mix" among the occupants of the authority's premises.

Mrs. Bunte's annual income was below the eligibility level when she commenced occupancy in her apartment. Early in 1970, when it became apparent that her income for the year would exceed the allowable amount, she participated with the administrator of the authority in procuring the raising of her rent to the maximum of $98 for her apartment. More than 1,000 other tenants in 1970 were over-income in status, and were paying maximum rent as a result. While Mrs. Bunte's income for the year was among the highest of the authority's tenants, there were several tenants with income higher than hers.

We concur with a particular ruling of the mayor that violation of a known rule by 1,000 persons, or any number of persons, constitutes no excuse for the violation of that rule by a public official. Indeed, such a state of affairs may constitute additional and important cause for strict adherence to the rule by the official. However, that principle has no application here, where existence of the rule has not been shown. On the contrary, the treatment of more than 1,000 other cases is evidence that the rule in operation is just the opposite of the rule contended for by the mayor.

The mayor did not find that Mrs. Bunte's continued occupancy of her apartment after she became over-income was in violation of any known duty or rule. As demonstrated above, such a finding could not properly be made. Instead, his finding was that her "misconduct in office" consisted of her election to request from the authority the payment of money earned by her as a member of the authority when her income already exceeded the maximum, which "markedly increase[d] the margin by which her income exceeded the maximum limit." Since no duty or rule was violated, at most this finding constitutes a criticism of her judgment, and errors of judgment cannot be construed as misconduct in office. See *Belinfante* v. *Mayor of Revere*, 352 Mass. 712, 718.

Examination of the special circumstances of Mrs. Bunte's situation confirms us in our conclusion on this aspect of the case. When she was appointed to her present five-year term on the authority early in 1970, she was already in an over-income status, which she had only recently reached by reason of her earnings from another social agency. It was apparent then that her earnings from the authority would further increase her earnings in excess of the allowable maximum, unless the unrealistic assumption was made that she would accept no compensation for her work with the authority. It is a fair inference that she was appointed to the authority partly by reason of her status as a tenant of the authority, that she could better serve the authority by continu-

ing as a tenant, and that an apartment outside of that particular housing project would have afforded her safer and more pleasant surroundings.

5. The mayor's finding as to charge (2) above was that a Tenant Status Review Form accurately reflecting Mrs. Bunte's income had not been filed with the authority, and that this constituted misconduct in office. The evidence was that the rules of the authority required the tenant to complete and file two forms annually, viz. (1) a Tenant Status Review Form, and (2) an Application for Continued Occupancy. The Tenant Status Review Form provided space for details of the income of the tenant. Since the only consequence of achieving over-income status under the authority's practice was the raising of rent to the maximum, we conclude that Mrs. Bunte's failure to provide all of the financial details requested upon the review form, was not such an action as a reasonable mind could construe as misconduct sufficient to render her unfit to continue to hold office, so long as her rent was raised to the maximum without delay. The uncontradicted evidence shows that Mrs. Bunte did make prompt arrangement for her rent to be raised to the maximum.

Further, we conclude that Mrs. Bunte complied with the rule in all but its most technical sense. The evidence shows that a Tenant Status Review Form and an Application for Continued Occupancy were filed for Mrs. Bunte in 1970, although the financial details were not entered upon the form. The form, which was received in evidence as an exhibit, reflects that her rent was raised to the maximum on April 22, 1970. The evidence was that, as a tenant in 1969, Mrs. Bunte provided the information as to her earnings, that the Application for Continued Occupancy was filed with the manager of the local project, and that later a newspaper carried the information contained in her supposedly confidential form. As a result, when she received the application form for 1970, she discussed the breach of confidence with the administrator of the authority. The administrator

took possession of at least one of the two forms and amended it by adding additional information he received from her. He then, at her request, raised her rent to the maximum. She had made disclosure of her over-income status to the administrator and to the chairman of the authority. The evidence does not warrant any inference that she concealed, or attempted to conceal, her over-income status from those persons in the authority who had a right to know of it. The evidence does not warrant a conclusion that she was treated any differently, in any respect, from any other tenant of the authority.

6. On charge (3) above the mayor found that Mrs. Bunte had received compensation for services to the authority in violation of a regulation adopted by the authority's board on June 14, 1946. From this the mayor found misconduct in office by Mrs. Bunte. She, like other members of the authority, was compensated on a per diem basis for the time she actually worked. The 1946 regulation required that the requests for compensation should specify the dates for which payment was claimed. The uncontradicted evidence was that Mrs. Bunte did not specify the dates upon most of her requests for compensation in 1970.

We conclude, from evidence of many years of total disuse of the 1946 regulation by members and employees of the authority, that it constituted no rule at all. It was within the power of the members of the authority to revoke or repeal the regulation and, for every practical purpose, they did so. The evidence showed that when Mrs. Bunte was appointed in 1969, she was told to call the director of finance or his assistant and state the number of days for which she claimed compensation. The director of finance came to that office in 1957. He continued to operate as his predecessor had with respect to payment of compensation to members of the authority. When a member called, as Mrs. Bunte was instructed to do, the director or his assistant would type out a form which stated: "Please compensate me for [blank] days spent in the performance of my duties in the month of

[blank]." This was the only procedure in existence during the period Mrs. Bunte was a member of the authority.

There was no evidence that Mrs. Bunte claimed or received any compensation that she had not earned, although we observe that a major part of the lengthy hearing before the mayor and council consisted of an inquiry as to that issue. Her failure to specify dates was at most an error of judgment in not following good business practice.

7. In accordance with the order of the judge of the Superior Court, a judgment shall enter which orders that the mayor and the city council of the city of Boston are to reinstate Mrs. Bunte as a member of the Boston Housing Authority for the balance of the term for which she was appointed and which expires on January 8, 1975.

*So ordered.*