JOSEPH M. TIERNEY & others[1] vs. MAYOR OF BOSTON
& others.[2]

Suffolk.  March 20, 1980. — August 15, 1980.

Present: GREANEY, PERRETTA, & DREBEN, JJ.

*Municipal Corporations,* By-laws and ordinances, Officers and employ-
ees.  *Boston.*

Provisions of a city ordinance which prohibited the mayor of Boston from
    employing more than thirty non-civil service employees in his office
    and established maximum salaries for such employees constituted an
    invalid interference with the mayor's exclusive power to appoint em-
    ployees to his office under St. 1909, c. 486, § 15.  [405-409]

CIVIL ACTION commenced in the Superior Court Depart-
ment on August 17, 1979.

The case was heard by *Dimond, J.*

*Charles F. Choate (Eric W. Wodlinger* with him) for the
plaintiffs.

*William J. Smith,* Assistant Corporation Counsel (*Arlene
S. LaPenta,* Assistant Corporation Counsel, with him) for
the defendants.

PERRETTA, J.  Pursuant to G. L. c. 214, § 1, c. 231A, § 1,
and c. 40, § 53, the plaintiffs brought an action in the
Superior Court seeking declaratory and injunctive relief
against the defendants.  The plaintiffs allege that the mayor
is acting in violation of pertinent portions of a 1979 ordi-
nance by employing more than thirty non-civil service em-
ployees in his office and by paying them salaries in excess of

---

[1] Lawrence S. DiCara, Raymond L. Flynn, Louise Day Hicks, Christo-
pher A. Iannella, Frederick C. Langone, Patrick F. McDonough, Albert
L. O'Neil, Rosemarie Sansone, individually and as members of the city
council of Boston, and James Coyle.

[2] The collector-treasurer and the auditor of Boston.

the maximum amounts set out in the ordinance. The defendants refuse to comply with the mandates of the ordinance because, they allege, it is invalid. The judge entered a declaration that the challenged portions of the ordinance were invalid, and the plaintiffs appeal. We affirm the judgment.

The Legislature has granted to the mayor the sole power of the appointment and removal of certain employees in his office. Statute 1909, c. 486, § 15, provides in pertinent part: "The civil service laws shall not apply to the appointment of the mayor's secretaries, nor of the stenographers, clerks, telephone operators and messengers connected with his office, and the mayor may remove such appointees without a hearing and without making a statement of the cause for their removal." In April of 1979 the city council enacted over the mayor's veto, see St. 1948, c. 452, § 17D, as amended by St. 1951, c. 376, § 1, an ordinance pertaining to the same matter as that treated in § 15. City of Boston Code, Ord. 2 § 361 (1979), states in applicable part: "nor shall the mayor, unless authorized to do so by ordinance, appoint or incur expenses to the city for more than thirty non-civil service persons connected with his office as administrative assistants, secretaries, stenographers, clerks, telephone operators or messengers, no more than twelve of whom shall be administrative assistants; nor shall the compensation of any of such [specified employees] be established or changed except by ordinance." In addition, the ordinance sets out a schedule of maximum salaries for the various established classes of employees, and it purports to abolish all non-civil service positions in the mayor's office in excess of thirty.

The question presented is whether these portions of the ordinance derogate from St. 1909, c. 486, § 15. "[A] municipal ordinance cannot prevail over or supersede a statute, and the ordinance is invalid, where the ordinance and statute relate to a matter that is fully, exclusively and validly covered by the statute." 6 McQuillin, Municipal Corporations § 21.34 (3d ed. 1980). See generally *Doherty* v.

*Woburn,* 345 Mass. 523 (1963); *Dudley* v. *Cambridge,* 347 Mass. 543 (1964); *Bartley* v. *Watertown,* 350 Mass. 622 (1966); *Del Duca* v. *Town Admr. of Methuen,* 368 Mass. 1 (1975). The plaintiffs do not dispute that § 15 confers upon the mayor the exclusive power to appoint non-civil service employees to his office. Although they recognize that implicit in, and incidental to, that power to appoint is the power to fix the appointees' compensation, *Faulkner* v. *Sisson,* 183 Mass. 524 (1903); *Smith* v. *Lowell,* 190 Mass. 332 (1906); *Whalen* v. *First Dist. Court of E. Middlesex,* 295 Mass. 305 (1936), they argue that this implicit and incidental power exists only where there is no legislative provision which limits the mayor's right unilaterally to set salaries. It follows, they contend, that the ordinance provides such a limitation and thereby deprives the mayor of his otherwise inherent power under § 15. The plaintiffs also claim that the setting of the number of non-civil service employees at thirty does not interfere with the mayor's powers; rather, it merely places an outer limit on his appointment power. They assert that the effects of these provisions are to guarantee fiscal responsibility. We view these contentions as begging the issue, which is whether the Legislature, in enacting § 15, left open to the city council the right, through legislative action, to set limits upon the number and compensation of non-civil service employees appointed by the mayor under § 15.

"The establishment of salaries of municipal officers and employees is an act that is legislative in nature and may be exercised by the Legislature itself, or entrusted to the legislative branch of the city government, or delegated to the board or officer who appoints them or to some other board or officer." *Quinlan* v. *Cambridge,* 320 Mass. 124, 126 (1946), and cases there cited. Our review of St. 1909, c. 486, leads us to conclude that the Legislature, in creating the administrative framework for the government of Boston, delineated clear spheres of activities to be exercised by the separate branches of municipal authority. There is nothing in § 15 which even suggests that the Legislature in-

tended to delegate to the city council the power to limit or share in the mayoral prerogatives specified in § 15. That section confers upon the mayor the distinct power to appoint an unlimited number of non-civil service employees to his office and the concomitant exclusive power to set the salaries of these employees. Contrast factually *Faulkner* v. *Sisson*, 183 Mass. at 526 ("[T]he appointment or employment of such an officer includes the fixing of his compensation . . . as well as the choice and naming of the appointee; and each of these matters is *equally placed* within the general supervisory power of the city council" [emphasis supplied]). This is not to say, however, that the mayor's rights and responsibilities under § 15 affect in any manner the city council's power over appropriations under St. 1909, c. 486, § 3, as amended by St. 1941, c. 604, § 1.[3] In declaring the applicable portions of the ordinance in issue invalid, the judge properly and expressly declared that "Nothing herein, however, shall be deemed to affect the City Council's power over appropriations as provided by law." On the other hand, "[w]hile the statute recognizes the right of the city council to make specific appropriations, it does not contemplate that, in these appropriations, it shall attempt to interfere with the management of the department to the extent of stating the sums to be paid as wages or salaries to particular clerks or employees." *Smith* v. *Lowell*, 190 Mass. at 335. Thus, reading St. 1909, c. 486, § 15, and St. 1909, c. 486, § 3, in harmony, we view these provisions as providing a balance of power between the executive and legislative branches of municipal authority. The

---

[3] Statute 1941, c. 604, § 1, contains the relevant provision concerning the city council's appropriation powers: "The city council may reduce or reject any [budget] item, but, except upon the recommendation of the mayor, shall not increase any item in, nor the total of, a budget, nor add any item thereto, nor shall it originate a budget. Not later than the first Monday in [October] the city council shall take definite action on the annual budget by adopting, reducing or rejecting it, and in the event of their failure so to do the items and the appropriation orders in the budget as recommended by the mayor shall be in effect as if formally adopted by the city council and approved by the mayor."

ordinance attempts to tip the scales contrary to the Legislature's intent as manifested in those statutory provisions.

Further, we cannot agree that the ordinance neither detracts from nor conflicts with the mayor's statutory privileges because it merely imposes outer limits upon his powers. As a practical and realistic matter, these outer limits defeat the intent and objective of § 15, which are to give the mayor employment prerogatives, restricted only by budgetary action (see note 3, *supra*) in performing his executive duties.

The plaintiffs also argue that the city council was empowered by G. L. c. 41, § 108A, to enact the ordinance.[4] *Doherty* v. *Woburn*, 345 Mass. 527 ("Indeed, G. L. c. 41, § 108A . . . permits a city by ordinance to establish employee classifications and salary plans"). We note, however, that in *Doherty* the council's action "was not executive action forbidden to the council," unlike the present instance, where such council action conflicts with § 15. *Id.* at 527 & n.4. Thus, while § 108A permits a city council to establish classification and salary plans, it does not do so in disregard of other enactments which may control the matter. "In considering the specific charter provisions [§ 15] . . . together with the general provisions of [§ 108A], weight must be given to the principle that 'strong terms are required to show a legislative intent to supersede by a general act a special act which may be made in regard to a place, growing out of its peculiar wants, condition, and circumstances.' City charters are essentially [such] special enactments designed to provide for the particular needs of the various cities." *Welch* v. *Contributory Retirement Appeal Bd.*, 343 Mass. 502, 507 (1962), and cases there cited.

---

[4] Section 108A, as appearing in St. 1948, c. 351, provides in pertinent part: "A city by ordinance . . . may establish, and . . . amend, a plan classifying any or all positions [with exceptions not here applicable] . . . into groups and classes doing substantially similar work or having substantially equal responsibilities. Such city . . . may in like manner or . . . by vote of the city council, subject to the provisions of its charter . . . establish, and . . . amend, a plan establishing minimum and maximum salaries to be paid to employees in positions so classified."

See generally 6 McQuillin, Municipal Corporations § 21.28 (3d ed. 1980). We do not construe § 108A as a clear and strong legislative pronouncement that the Boston city council, purporting to act under § 108A, has the power to establish an employee classification and salary plan in derogation of the city charter. Moreover, even were we to conclude that the city council could establish a classification plan under the first sentence of § 108A, the council could not create a pay schedule under the second sentence of that statute which expressly requires such action be "subject to the provisions of [the city's] charter." As earlier discussed, § 15 implicitly confers this power upon the mayor. Consequently, any pay schedule which the city council establishes would be contrary, rather than subject, to charter provisions.

The disputed portions of the ordinance are an invalid interference with the mayor's exclusive powers delegated to him by the Legislature. In light of our conclusion, it is unnecessary to consider the parties' remaining contentions concerning the validity of the ordinance.

*Judgment affirmed.*