JOSEPH L. WHALEN & others *vs.* CITY OF HOLYOKE & others.

Hampden.   February 9, 1982. — April 22, 1982.

Present: HALE, C.J., CUTTER, & KASS, JJ.

*Municipal Corporations*, Mayor, Board of aldermen, Municipal finance,
   Employees.

Although the Holyoke city charter, embodied in St. 1896, c. 438, em-
   powered the board of aldermen to prescribe the number of personnel
   for the fire department, the mayor, pursuant to his power to limit ap-
   propriations under G. L. c. 44, the municipal finance act, was not re-
   quired to include in his annual budget recommendation to the board
   funding for the number of fire department personnel provided by the
   city ordinance. [449-453]
The Holyoke city charter, embodied in St. 1896, c. 438, implicitly recog-
   nized authority in the board of fire commissioners to remove fire de-
   partment personnel in order to bring the fire department's budget
   within the fiscal constraints imposed by the mayor's budget proposal.
   [453-455]

CIVIL ACTION commenced in the Superior Court Depart-
ment on May 12, 1981.

The case was heard by *Urbano, J.*

*Peter H. Barry,* Assistant City Solicitor, for the defend-
ants.

*James B. Krumsiek* for the plaintiffs.

HALE, C.J.   The plaintiffs, Joseph L. Whalen, individu-
ally and as president of Local 1693, International Associa-
tion of Firefighters, AFL-CIO (Union), and the Union,
which is the collective bargaining agent for the firefighters
of the city of Holyoke, brought this action against the city of
Holyoke, its mayor and its board of fire commissioners.
The plaintiffs' complaint sought declaratory and injunctive
relief regarding the legislative powers of Holyoke's board of
aldermen and alleged usurpation of those powers by the

mayor and fire commissioners. The issue raised is whether the Holyoke charter, embodied in St. 1896, c. 438, requires that the mayor submit, in his annual budget recommendation to the board of aldermen, sums sufficient to employ the number of firefighters established under a city ordinance.

In 1979 the Holyoke board of aldermen passed, over the mayor's veto,[1] an ordinance[2] providing that the Holyoke fire department shall consist of 162 members. This ordinance also specified the employee ranks within the fire department and the number of firefighters to fill each rank.[3] Prior to this time, ordinances concerning the composition of the fire department prescribed that certain ranked positions within the department would be established and manned but stated that the remainder of the force would consist only of such firefighters "as the fire apparatus of the city may, from time to time, require for efficient service." See, e.g., City of Holyoke Ordinances (April 5, 1923 & June 16, 1964). In 1980 an ordinance[4] was passed increasing the number of captains from nine to ten. This ordinance was approved by the mayor. As of April 7, 1981, the date on which the mayor submitted to the board of aldermen his 1982 fiscal year budget, which would take effect on July 1, 1981, the fire department had 146 members on its active payroll. The mayor's 1982 budget proposal, which reflected recommendations by the board of fire commissioners, provided funding for only 138 members. Then

---

[1] Section 24 of the city charter provides that the board of aldermen can override the mayor's veto of a proposed ordinance by a two-thirds vote. St. 1896, c. 438, § 24.

[2] Fourth amendment to c. 7 of the Revised Ordinances of the city of Holyoke (May 1, 1979).

[3] The ordinance states: "The Fire Department shall consist of One Hundred Sixty-Two [162] members [and] . . . shall include the following personnel: Chief 1 [;] Deputy Chiefs 8 [;] Captains 9 [;] Lieutenants 25 [;] Privates 107 [;] Fire Alarm Personnel 9 [;] Maintenance Personnel 2 [;] Secretary 1 [.]"

[4] Fifth amendment to c. 7 of the Revised Ordinances of the city of Holyoke (Oct. 22, 1980).

(during a June, 1981, meeting) the board of fire commissioners voted to send notices of intended termination of employment to certain firefighters to bring the force down to the 138 members reflected in the mayor's budget proposal. The present action ensued, and the case was submitted to a Superior Court judge on a statement of agreed facts and exhibits. He ruled that the city charter empowered the board of aldermen to establish the number of firefighters in the city and that the mayor could not circumvent that authority by providing in his budget proposal for less than the full force of firefighters under the ordinance. Judgment was entered ordering the mayor to submit a supplementary budget request sufficient to maintain the fire department at the strength established by ordinance and enjoining the fire commissioners from terminating fire department personnel "because of a lack of funds" in the mayor's budget recommendations. The defendants have appealed from this judgment. The plaintiffs have filed cross appeals from the judge's failure to order the fire commissioners to fill the vacant positions created by ordinance.

Holyoke has never adopted a plan of government under G. L. c. 43 (City Charters). Thus, it is governed by its charter provisions enacted in 1896 and, as far as here relevant, to date unchanged. The charter provides that "[t]he administration of all the fiscal, prudential and municipal affairs of said city . . . shall, except the affairs of the public schools [,] . . . be vested in an executive department, which shall consist of . . . the mayor, and in a legislative department, which shall consist of . . . the board of aldermen. . . . The executive department shall never exercise any legislative power, and the legislative department shall never exercise any executive power, except as herein otherwise provided." St. 1896, c. 438, § 2.[5]

---

[5] Although the characterization of a particular function as either legislative or executive is often not easily made, the test usually applied is whether the action creates a new law or merely executes a law already in existence. 2 McQuillin, Municipal Corporations § 10.06 (3d ed. 1979).

The charter further provides that "[t]he board of aldermen shall establish a fire department for said city, to consist of three fire commissioners, a chief, and of such officers and members . . . as the board of aldermen shall from time to time prescribe" and that "[the] fire commissioners shall have authority to define the rank and duties of . . . officers and members, and in general to make such regulations concerning the conduct and government of such department . . . as they may deem expedient . . . . The appointment of all the officers and members of the fire department . . . shall be vested in the fire commissioners exclusively." St. 1896, c. 438, § 19. The plaintiffs argue that this provision gives the aldermen exclusive power to determine the size of the fire department and that the mayor's attempt to eviscerate this power by failing to recommend in his budget proposal sums sufficient to pay the number of firefighters established by ordinance is invalid.

The mayor's argument rests mainly on the municipal finance act, G. L. c. 44, which, among other things, governs the budget making process in the cities of this Commonwealth. General Laws c. 44, § 32 (as amended through St. 1975, c. 26, §§ 1 & 2) provides that "[w]ithin ninety days after the annual organization of the city government . . . the mayor shall submit to the city council the annual budget which shall be a statement of the amounts recommended by him for proposed expenditures of the city for the next fiscal year." The Holyoke board of aldermen is the equivalent of a city council. *Mayor of Holyoke* v. *Aldermen of Holyoke*, 381 Mass. 708, 709 (1980). General Laws c. 44, § 32, further provides that "[t]he city council may by majority vote make appropriations for the purposes recommended and may reduce or reject any amount recommended in the annual budget but, except on recommendation of the mayor, shall not increase any amount in or the total of the annual budget, nor add thereto any amount for a purpose not included therein, except as provided in section thirty-three." Section 33 (as appearing in St. 1941, c. 473, § 3) provides: "In case of the failure of the mayor to trans-

mit to the city council a written recommendation for an appropriation for any purpose not included in the annual budget . . . after having been so requested by vote . . . said council, after the expiration of seven days from such vote, . . . may make such appropriation by a vote of at least two-thirds of its members . . . ."

The disposition of this case hinges on the resolution of the two competing interests embodied in these statutory enactments — the first being the explicit power given to the board of aldermen to prescribe the number of personnel for the fire department, and the second being the mayor's power to limit appropriations under the municipal finance act. We hold that the Legislature, in enacting the municipal finance act, provided the mayor with the initial responsibility for limiting municipal expenditures and that he is not bound by an ordinance which, by prescribing staffing levels in a city department, appears to set limits on his prerogatives in formulating the city budget. We therefore reverse the judgment. In doing so we do not intimate that the mayor, or more accurately the fire commissioners, have the power to appoint personnel beyond the numbers set by ordinance.

A case which recognized this same issue is *Mayor of Holyoke* v. *Chief of Police of Holyoke,* 328 Mass. 253 (1952). That case addressed the parallel power of the board of aldermen to prescribe the level of police protection in Holyoke. In *Chief of Police of Holyoke* the aldermen had passed an ordinance, over the mayor's veto, which reduced the weekly working hours of the police force to forty without a reduction in the weekly compensation. The Holyoke city charter provided for the police department in much the same way as it provides for the fire department: "The board of aldermen shall establish . . . a police department, consisting of a city marshal and of such . . . other members of the police force as it may prescribe, and may make regulations for the government of said department." St. 1896, c. 438, § 21. The trial judge had found that the reduction in hours was valid. The judge also had found

that that reduction made the then prevailing level of police protection in Holyoke inadequate and that sixteen additional officers at an expense of $34,606.26 would be needed for proper protection of the city. The mayor argued that the ordinance, which would have the effect of requiring him to increase the police force to provide for proper police protection, would deny him his prerogative under G. L. c. 44, § 32, of initiating appropriations through his budget recommendation.

The Supreme Judicial Court did not explicitly answer this contention. It first held that the ordinance was not an increase in appropriation, but merely a regulation of hours which was within the control of the aldermen. *Chief of Police of Holyoke*, 328 Mass. at 257. Then, concerning the judge's finding that additional expenditures would be needed adequately to protect the city, the court held that the level of police protection was a question for the Legislature, and not the judiciary. *Id.* at 258. The court found that it was for the aldermen to determine the adequate level of police protection. *Id.* In deciding, however, that the aldermen were vested with the power to determine the size of the police force, the court in *Chief of Police of Holyoke* did not decide whether the aldermen could exercise that right in derogation of the mayor's powers to limit appropriations under G. L. c. 44, § 32.

We do not think that the court contemplated that the aldermen's powers should extend so far. If the court had intended to include within its holding that the aldermen's explicit power to prescribe the members of the police force superseded the mayor's power to limit appropriations, the next to last paragraph of the opinion would be meaningless when read in context with the rest of the opinion. That paragraph states that "the prohibitions of the municipal finance act 'must not be weakened, nor the exceptions enlarged, by constructions which might tend to break down the safeguards designed to be set up or to admit of the evils intended to be prevented.'" *Chief of Police of Holyoke*, 328 Mass. at 258 (quoting *Continental Constr. Co. v. Lawrence*,

297 Mass. 513, 515 [1937]). Having in mind this caveat, we hold that the aldermen's parallel power over the fire department cannot be used in derogation of the municipal finance act.

We can also draw from the legislative history of the municipal finance act. A precursor to the municipal finance act, as appearing now in G. L. c. 44, was embodied in St. 1913, c. 719. That precursor, with a few variations, established the same framework in the budgetary process as exists in c. 44. See St. 1913, c. 719, § 20. It was contemplated under the earlier act that mayors would be granted substantial authority to place a ceiling on annual expenditures because "there should be lodged in the chief executive of every city full authority to determine the maximum amount to be expended by the city." Report of the Joint Special Committee on Municipal Finance, 1913 House Doc. No. 1803, at 61. The city council could then accept or reduce the amount recommended by the mayor but could not increase appropriations above the mayor's recommendations. St. 1913, c. 719, § 20. Compare G. L. c. 44, § 32. Even more instructive was the intent manifested by § 22 of that act, which repealed all prior acts or city charters inconsistent with this budgetary framework. St. 1913, c. 719, § 22. By its express terms § 22 underscored the importance of the mayor's role in formulating and putting a cap on city expenditures and extinguished the force of any contrary city charter provisions.

The plaintiffs' argument that the mayor's budget recommendation for only 138 firefighters runs afoul of G. L. c. 44, § 33A, is not persuasive.[6] Section 33A (as amended through St. 1969, c. 849, § 61) provides that "[t]he annual budget shall include sums sufficient to pay the salaries of officers and employees fixed by law or by ordinance." The firefighters' salaries were not fixed by law or ordinance; they were fixed under a collective bargaining contract. Compare *Lynch* v. *Fall River*, 336 Mass. 558, 559 (1958).

---

[6] Section 33A was not part of the original municipal finance act as found in St. 1913, c. 719.

The plaintiffs' argument that only *positions* need be created under an ordinance to trigger § 33A not only would be reading words into the statute that are not there, it would also be an interpretation contrary to case law. See, e.g., *James* v. *Mayor of New Bedford*, 319 Mass. 74, 76-77 (1946); *Morra* v. *City Clerk of New Bedford*, 340 Mass. 240, 243 (1960). Furthermore, such an interpretation would be a broad license to city councils to dictate, through ordinances of this type, the size of the city work force and the budget needed to support such a force. This is not the scheme envisioned under the municipal finance act. The preparation of the budget is an executive function which "implies a comprehensive survey of all the needs for expenditures for the ordinary municipal operations and an intelligent and discriminating calculation of necessary charges." *Flood* v. *Hodges*, 231 Mass. 252, 256 (1918).

We recognize that checks and balances which are built into the municipal finance act limit the power of the mayor in certain respects. If a particular purpose is omitted in the mayor's budget the board of aldermen can provide for the purpose themselves. G. L. c. 44, § 33. But compare *Daly* v. *Mayor of Medford*, 241 Mass. 336, 338-339 (1922) (failing to fund additional water department employees would not be failure to provide for a "purpose" under § 33, but failing to provide for salary of clerk of committees was such a failure). Also, when a city incurs an obligation under a civil service contract (see *Barnard* v. *Lynn*, 295 Mass. 144, 147 [1936]), a collective bargaining contract (see *Mendes* v. *Taunton*, 366 Mass. 109, 116 [1974]; *Boston Teachers Local 66* v. *School Comm. of Boston*, 370 Mass. 455, 474 [1976]), a minimum wage statute (see *Minnie* v. *Chicopee*, 344 Mass. 743, 746 [1962]), or a career incentive statute (see *Doherty* v. *Mayor of Everett, ante* 202 [1982]), the usual proscriptions under the municipal finance act may not be in force. The policy considerations, however, which require the mayor to include such sums in his budget are not present in the case at bar, especially in light of the Legislature's manifestation of priorities under St. 1913, c. 719, § 22.

We also note the proposition established in *Sherriff* v. *Mayor of Revere*, 355 Mass. 133 (1969), which is that, even though the mayor may not have power to appoint or remove certain city employees, he can control the number of such employees through the power to recommend appropriations. *Id.* at 137. We note further that in a recent opinion by this court it was recognized that the mayor's budgetary powers could extend even to legislative employees. *Mayor of New Bedford* v. *City Council of New Bedford, ante* 251, 256 (1982). Compare and contrast *Tierney* v. *Mayor of Boston*, 10 Mass. App. Ct. 404, 406-409 (1980), s.c., sub nom. *City Council of Boston* v. *Mayor of Boston*, 383 Mass. 716, 718 (1981) (where the mayor conceded that the number of executive employees was subject to appropriation powers of city council).

The mayor's rights and obligations under the municipal finance act are to provide for fiscal management and the allocation of funds to the various municipal departments. He was therefore authorized to provide for that level of fire protection which he felt would be appropriate, given the needs of the city and its anticipated tax revenues. Desired changes in the mayor's sense of priorities in these circumstances can be effected only by the electorate at the polls.

As to the fire commissioners' authority to send termination notices to fire department personnel in order that the number of personnel reflect the mayor's proposed budget we hold that, although the city charter is silent as to the power to terminate, it implicitly recognizes this power to be in the commissioners. As noted above, the city charter provides that "[t]he appointment of all the officers and members of the fire department . . . shall be vested in the fire commissioners exclusively." St. 1896, c. 438, § 19. The general rule in this regard is that the "power to remove . . . is an incident to the power to appoint." *Adie* v. *Mayor of Holyoke*, 303 Mass. 295, 300 (1939) (quoting *State* v. *Dahl*, 140 Wis. 301, 303 [1909]). See also G. L. c. 31, § 39 (civil service laws contemplate appointing authority takes action to separate employee from position for lack of money), and

§ 41 (appointing authority to give notice to civil service employee who is to be discharged for lack of money). We are of opinion that the board of fire commissioners has the authority to hire and to remove fire department personnel, within the confines of the collective bargaining agreement and the applicable civil service laws, in order to bring the department's budget within the fiscal constraints imposed by the mayor's budget proposal. There was no error in not ordering the board of fire commissioners to fill the positions created by the ordinance.

The judgment is reversed. A new judgment is to be entered declaring that the board of aldermen has the power under the city charter to provide for the number of officers and personnel of the fire department but that the number of personnel of the department is subject to the mayor's budgetary powers and that the mayor is not required to include in his budget recommendations funding for fire department personnel to the full extent provided by ordinance. The judgment is further to provide that the complaint is otherwise dismissed.

*So ordered.*