CITY OF GARDNER & another[1] *vs.* SANDRA M. BISBEE & another.[2]

No. 92-P-383.

Worcester. May 5, 1993. - July 7, 1993.

Present: BROWN, KASS, & LAURENCE, JJ.

*Civil Service*, Judicial review, Termination of employment, Municipal finance, Police, Collective bargaining. *Practice, Civil*, Review respecting civil service. *Municipal Corporations*, Municipal finance, Mayor, Employees.

A decision of the Civil Service Commission adopting the findings and recommendations of an administrative magistrate that a city's commissioner of public safety restore a certain tenured civil service police sergeant to the position of director of operations of the city's police department was supported by substantial evidence on the record, including ample evidence at a hearing before the administrative magistrate supporting her findings that actions by the city's mayor causing the officer's demotion, ostensibly due to lack of funding, did not result in a savings of police department funds, were not undertaken for a justifiable reason, and were not taken in good faith. [722-725]

CIVIL ACTION commenced in the Superior Court Department on March 12, 1990.

The case was heard by *John P. Forte*, J., sitting under statutory authority.

*C. Deborah Phillips*, City Solicitor, for the plaintiffs.

*Peter Sacks*, Assistant Attorney General, for Civil Service Commission.

*Edward R. Lembo* for Sandra M. Bisbee.

BROWN, J. This is an appeal from a judgment of the Superior Court upholding a decision of the Civil Service Commission (commission) ordering the commissioner of public safety

[1]Commissioner of public safety of the city of Gardner.
[2]Civil Service Commission.

of Gardner (commissioner) to restore Sergeant Sandra Bisbee to the position of director of operations of the Gardner police department. Sergeant Bisbee is a tenured civil service employee. In July, 1988, she was promoted by the commissioner, over the mayor's veto and with the approval of the city council, to the position of director of operations. On several occasions prior to her appointment, the mayor voiced his objections to the creation of the position and refused to fund it. Subsequent to Bisbee's elevation to director, the mayor entered into a collective bargaining agreement which guaranteed six sergeant positions and prohibited the use of any money from the sergeants' budgeted appropriation to fund other positions. Because Bisbee's salary as a director previously had been paid from the sergeants' budget, the commissioner reluctantly notified Bisbee that "because Mayor John Deveau . . . failed to provide the necessary funding for the position and . . . signed agreements with the Superior Officers Union which restrict[ed] [his] ability to transfer funds within the Personnel Services Accounts," she was being demoted to her former rank — sergeant.

After a hearing, an administrative magistrate recommended that Bisbee be returned to her position as director of operations. The commission adopted the findings and recommendation of the magistrate. The city and the commissioner brought an action in the nature of certiorari pursuant to G. L. c. 249, § 4, for review of the commission's decision. A judge of the Superior Court upheld the decision of the commission. The issue before this court is whether the commission's decision is "legally tenable and supported by substantial evidence on the record as a whole." *Commissioner of Health & Hosps. of Boston* v. *Civil Serv. Commn.*, 23 Mass. App. Ct. 410, 411 (1987). See *Bunte* v. *Mayor of Boston*, 361 Mass. 71, 74 (1972).

A tenured civil service employee cannot be demoted except for "just cause." G. L. c. 31, § 41, as appearing in St. 1978, c. 393, § 11. In attempting to show just cause, the appointing authority may only rely on the reasons for demotion that it gave to the employee in writing, in this case, lack of

funding. *Gloucester* v. *Civil Serv. Commn.*, 408 Mass. 292, 297 (1990). "Lack of money can constitute just cause." *Id.* at 298, citing *Debnam* v. *Belmont*, 388 Mass. 632, 634 (1983).

The mayor testified that he refused to fund the director of operations position, for three reasons: (1) the city was unable to afford two director positions in the police department[3]; (2) he believed that the director performed the same duties as the captain; and (3) he believed that the city's goal should be to put more officers on the street rather than in the office. However, the only reason given to Sergeant Bisbee for her demotion was lack of funding. Based upon the testimony presented, the administrative magistrate who presided over the hearing concluded that the mayor's actions "did not result in a savings of police department funds, his actions with regard to Ms. Bisbee's position were not undertaken for a justifiable reason, and he did not act in good faith."

Other than the mayor's task of balancing competing demands for city funds, the record is devoid of any evidence that the city was experiencing a shortfall of revenue which might justify the need for a reduction of police department personnel.[4] In fact, the evidence showed that Bisbee's promotion to director of operations actually saved police department funds because her salary as a director was less than her salary as a sergeant. (The sergeant's position that she vacated was not filled.) Even if such a fiscal crisis had existed, by ordinance only the commissioner is vested with the authority to appoint and remove personnel within the department of public safety of Gardner.[5] Although the mayor may

---

[3]At the time that Sergeant Bisbee was promoted to director of operations, there was also a director of administration in the police department.

[4]Of course, the mayor's task of balancing competing demands for city funds based upon the city's policy objectives may alone be sufficient to justify his refusal to fund the position of director of operations if there is no bad faith. See *Whalen* v. *Holyoke*, 13 Mass. App. Ct. 446, 454 (1982).

[5]"The Commissioner shall appoint on merit and fitness alone and have the power to remove all personnel of said departments . . . subject to prevailing General Laws and ordinances." Section 1(d) of the Gardner Ordinance Creating a Department of Public Safety for the City of Gardener, as amended, November 13, 1987.

limit budget appropriations to an amount sufficient to pay only a certain number of employees, he is not authorized to determine which employee is to be demoted or dismissed. See *Sherriff* v. *Mayor of Revere*, 355 Mass. 133, 137 (1969); *Whalen* v. *Holyoke*, 13 Mass. App. Ct. 446, 454 (1982).

Here the mayor did more than limit budget appropriations. After his initial refusal to fund the position was overridden by vote of the city council, he undermined the efforts of the council and the commissioner to reestablish[6] the position by entering into the supplemental agreement with the union which locked in the salaries for six sergeants. Those actions eliminated the source from which Bisbee's position had been and would likely have been funded in the future. That the mayor failed to consult with the commissioner regarding the terms of the supplemental agreement with the union is further evidence that the mayor's actions were aimed at ensuring Bisbee's termination as director of operations. It was improper for the mayor to attempt to usurp the appointing authority of the commissioner indirectly through his budget appropriations recommendations or the terms of collective bargaining agreements.[7]

Finally, the evidence in the record does not support the mayor's claim that the director of operations merely duplicated the duties of the captain. Bisbee was solely responsible for the detectives, the drug task force, and the direct administration of officer discipline. Furthermore, the commissioner testified that after Bisbee's demotion, her duties as director needed to be performed and were divided between the director of administration, the captain, and the commissioner.

---

[6]The director of operations position was originally created by a 1986 city ordinance. However, that ordinance was later amended in 1989 to require only the director of administration position and any subordinate positions that the commissioner and the city council deemed necessary. In accordance with the amended ordinance, the commissioner later petitioned the city council to reestablish the second director position.

[7]We have held that civil service laws cannot be ignored in favor of collective bargaining agreements. *Fall River* v. *Teamsters Union, Local 526*, 27 Mass. App. Ct. 649, 651 (1989).

The commission's decision ordering that Bisbee be restored to her position as director of operations was supported by substantial evidence on the record, as there was ample evidence before the administrative magistrate to support her findings which, in turn, justified her conclusion.

*Judgment affirmed.*