CEPHAS H. BRACKETT *vs.* CITY OF BOSTON.

Middlesex.    January 26, 1892. — September 29, 1892.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, MORTON, LATHROP, & BARKER, JJ.

*Agreement to Purchase Land — Unauthorized Vote of City Council — Specific Performance.*

Under the St. of 1885, c. 266, § 12, the city council of the city of Boston has no power to make a contract with the owner of a parcel of land for its purchase for a public playground.

BILL IN EQUITY, filed on November 14, 1890, for specific performance by the defendant of its agreement to purchase land.

Hearing before *Lathrop*, J., who reserved the case for determination by the full court, a final decree to be made in

accordance with such determination.    The facts appear in the opinion.

The case was argued at the bar in January, 1892, and afterwards was submitted on the briefs to all the judges.

*J. B. Goodrich*, ( *C. R. Darling* with him,) for the plaintiff.

*T. M. Babson*, for the defendant.

LATHROP, J.    In 1889, the city council of the city of Boston undertook to make a contract with the plaintiff for the purchase of a parcel of land for a public playground.    The only ground of defence is, that under the St. of 1885, c. 266, amending the charter of the city of Boston, the power to make such a contract was taken away from the city council.

Under the revised charter of 1854 of the city of Boston, (St. 1854, c. 448,) the mayor had but little power, although it was declared, by § 45, that he " shall be taken and deemed to be the chief executive officer of said corporation."    The executive powers of the city generally were, by § 33, vested in the board of aldermen.    Certain other powers were, by § 35, vested in the common council.    The principal power of the mayor was the right of veto, given by §§ 35, 47.

The St. of 1885, c. 266, made many radical changes.    By § 6, it is provided that " The executive powers of said city, and all the executive powers now vested in the board of aldermen, as such, as surveyors of highways, county commissioners, or otherwise, shall be and hereby are vested in the mayor, to be exercised through the several officers and boards of the city in their respective departments, under his general supervision and control."    The section goes on to declare that " Such officers and boards shall, in their respective departments, make all necessary contracts for the employment of labor, the supply of materials, and the construction, alteration, and repair of all public works and buildings, and have the entire care, custody, and management of all public works, institutions, buildings, and other property, and the direction and control of all the executive and administrative business of said city."

By § 12, it is provided that " Neither the city council nor either branch thereof, nor any member or committee thereof or of either branch thereof, nor the board of aldermen acting in any capacity, . . . shall directly or indirectly take part in the

employment of labor, the making of contracts, the purchase of materials or supplies, the construction, alteration, or repair of any public works, buildings, or other property, or the care, custody, and management of the same, or in the conduct of any of the executive or administrative business of the city, or in the expenditure of public money, except such as may be necessary for the contingent and incidental expenses of the city council or of either branch thereof."

The contention of the plaintiff is, that the power given to the subordinate officers and boards of the city to "make all necessary contracts for the employment of labor, the supply of materials," etc., limits the broader language in § 12, forbidding "the making of contracts" by the city council or either branch thereof. But we are of opinion that it was the intention of the Legislature to take from the city council the power of making contracts of any kind, and to vest this power in the mayor, so far as it is not imposed, by § 6, upon the subordinate officers and boards of the city, under the supervision and control of the mayor. The language of § 12 is broad enough to forbid the city council to make any contracts.

Although the construction of this statute cannot be affected by subsequent legislation, yet it is proper to call attention to the fact that the view which we take of the act now before us is in accordance with the policy of the Legislature in the latest legislation. See Sts. 1892, c. 324, § 20, incorporating the city of Medford; c. 355, § 21, incorporating the city of Everett; c. 377, art. 21, forms 1 and 2. The last is a general act providing for the establishment of city governments.

As we are of opinion that the city council of Boston did not have authority to make the contract sought to be enforced, the order must be,

*Bill dismissed.*