ATTORNEY GENERAL *vs.* CHARLES F. VARNUM.

Suffolk. February 1, 1897. — February 19, 1897.

Present: FIELD, C. J., ALLEN, HOLMES, LATHROP, & BARKER, JJ.

*Quo Warranto — Statute — City Charter — Power of Mayor to appoint to Office.*

Under St. 1896, c. 415, entitled " An Act to amend the charter of the city of Lowell," the power to appoint a superintendent of public buildings is in the mayor, and not in the city council.

INFORMATION by the Attorney General, in the nature of a *quo warranto*, alleging that the defendant had usurped the office of superintendent of public buildings in the city of Lowell. At the hearing, before *Barker*, J., it appeared that the respondent was elected to the office by concurrent vote of the city council on January 15, 1897, having filled the position during the preceding year by the election of that body, and that one Richard Bray was duly nominated by the mayor to the same

office on January 4, 1897, and qualified on the following day. The judge reserved the case for the consideration of the full court.

*F. W. Qua,* for the respondent.

*J. J. Hogan,* ( *W. A. Hogan* with him,) for the petitioner.

LATHROP, J.   The question before us is as to the effect of the St. of 1896, c. 415, entitled " An Act to amend the charter of the· city of Lowell," upon the charter itself, (St. 1875, c. 173,) and the ordinances passed in pursuance thereof, so far as the office of superintendent of public buildings for said city is concerned.

By § 2 of the St. of 1875, it is provided: " The administration of the fiscal, prudential, and municipal affairs of said city, with the government thereof, shall be vested in one principal officer, styled the mayor, one select council of eight, to be called the board of aldermen, and one council of not less than two nor more than four from each ward, to be called the common council; and the board of aldermen and the common council, in their joint capacity, shall be denominated the city council."

Section 16 declares that the mayor shall be " the chief executive officer of the city."

Section 17 provides: " The city council shall annually, as soon after their organization as may be convenient, meet in convention, and elect by joint ballot a city clerk, and a city treasurer and collector of taxes; they shall also elect, by concurrent vote, any number of surveyors of highways, not exceeding three, and shall, in such manner as the said city council may determine, by ordinance made for that purpose, elect all other officers necessary for the good government, peace, and health of the city not herein otherwise provided for; and all officers elected or appointed by the city council, or either branch thereof, shall hold their offices according to the tenure of the same and until their successors are chosen and qualified, unless otherwise provided for."

By c. 5, § 1, of the ordinances of the city of Lowell, it is provided as follows: " There shall be chosen annually, in the month of January or February, and whenever a vacancy occurs, by concurrent vote of both branches of the city council, a superintendent of public buildings, who shall hold his office until his successor is chosen, or he is removed ; and said superintendent

may be removed at the pleasure of the city council." Other sections of the chapter referred to define his duties.

It is agreed that, before the passage and acceptance of the St. of 1896, c. 415, the municipal business of the city of Lowell was conducted and administered by and through several departments, so called, namely, lands and buildings department, street department, health department, fire department, department of commons, and sewer department; and a joint committee of both branches of the city council for each of these departments was annually appointed to have charge thereof.

It is also agreed that the superintendent of public buildings, under the direction of the joint standing committee on lands and buildings or of the board of aldermen, had the care of the schoolhouses, and other buildings belonging to the city, and had power to employ suitable mechanics, and to superintend all repairs made on said buildings; he had also the charge of all carpenters' tools and materials belonging to the city not otherwise expressly provided for; he was also required to keep a record of all buildings belonging to the city, and the lands appurtenant thereto; and to report in the month of January annually to the city council in relation to the same, showing their condition, and the nature and amount of expenditures made thereon.

By § 19 of the charter, " the administration of the police, the executive powers of the city generally, with all the powers formerly vested in the selectmen of the town of Lowell, and heretofore vested in the mayor and aldermen of the city of Lowell, shall continue to be vested in and exercised by the mayor and aldermen of said city, as fully as if the same were herein specially enumerated." The same section then gives to the mayor and aldermen power to grant licenses, and to appoint constables.

By § 20, " All boards and officers, acting under the authority of the city, and intrusted with the receipt and expenditure of public money, shall be accountable therefor to the city council."

By § 21, in all cases in which appointments to office are to be made by the mayor and aldermen, the mayor is to have the exclusive power of nomination, but the nomination is subject to confirmation or rejection by the board of aldermen. " Any officers so appointed may be removed at any time by the board of aldermen."

It is apparent that, under the charter, the mayor, although styled the chief executive officer of the city, had in fact very little executive power; *Brackett* v. *Boston*, 157 Mass. 177; and that the business of the city was transacted principally by boards appointed by the city council, and responsible to them, who were supervised by joint committees, composed of members of the board of aldermen and of the common council. In this condition of things the St. of 1896, c. 415, was passed. It is entitled "An Act to amend the charter of the city of Lowell." No section of the charter is specifically repealed, but § 13 declares, "All acts or parts of acts and all ordinances of the city of Lowell inconsistent herewith are hereby repealed and annulled." By § 1, "All executive powers which are now by law vested in the city council of the city of Lowell, or either branch thereof, shall hereafter be vested in and exercised by the mayor of said city, except as hereinafter otherwise provided."

We are of opinion that the power which the city council exercised in appointing heads of departments under the ordinance passed in pursuance of § 2 of the charter was an executive power, and passed by the St. of 1896 to the mayor. The power to appoint an officer is in its nature an executive power. *Murphy* v. *Webster*, 131 Mass. 482. If regard is to be had to the nature of the office, (*Supervisors of Election*, 114 Mass. 247,) we are of opinion that the heads of departments such as are provided for in the ordinance are not mere ministerial officers, but are executive officers.

This view of § 1 is in harmony with the remaining sections of the act. The power of removal of an officer, which is incident to the power of appointment unless it is otherwise provided, is, so far as the power of the mayor is concerned, restricted by § 2, and certain departments are removed from the operation of the section. By §§ 5 and 6, heads of departments are made more independent than they were under the charter. By § 7, "Neither the city council nor either branch thereof, nor any committee or member thereof, shall directly or indirectly take part in the employment of labor, the purchase of material, the construction, alteration, or repair of any public works or other property, or in the care, custody, or management of the same, or in general in the expenditure of public money, or in the conduct of the execu-

tive or administrative business of the city, except as may be necessary for defraying the contingent and incidental expenses of the city council or of either branch thereof; nor shall they, or either of them, take part in the making of contracts."

There are other sections of the act, but none of them is, we think, opposed to the view which we have taken.

It follows that the mayor had authority to appoint Richard Bray to be superintendent of public buildings, and that the city council had no authority to appoint the respondent, after the St. of 1896 took effect. *Judgment of ouster.*