CITY COUNCIL OF BOSTON & another *vs.* MAYOR
OF BOSTON & others.[1]

Suffolk.   February 5, 1981. — June 5, 1981.

Present: HENNESSEY, C.J., BRAUCHER, LIACOS, & ABRAMS, JJ.

*Municipal Corporations*, By-laws and ordinances, Officers and employ-
ees.  *Boston.*

Provisions of a city ordinance which limited the number of employees in
    the office of the mayor of the city of Boston and fixed their maximum
    salaries constituted an invalid and unenforceable encroachment on the
    mayor's power, as granted implicitly in the city charter as a whole and
    specifically in St. 1909 c. 486, § 15, to determine the size and salary
    level of his own staff.  [719-721]
General Laws c. 41, § 108A, which permits the Boston city council to es-
    tablish a classification and salary plan for city employees, did not
    deprive the mayor of his authority to set compensation for his own
    staff or enable the city council to establish a classification plan in dero-
    gation of other provisions in the city charter.  [721-722]
The office of the mayor of the city of Boston is not a "department or agen-
    cy" subject to reorganization by the city council as an exercise of their
    authority under St. 1909, c. 486, § 5, as appearing in St. 1953,
    c. 473, § 1.  [722-723]

CIVIL ACTION commenced in the Superior Court Depart-
ment on August 17, 1979.

The case was heard by *Dimond*, J.

After review by the Appeals Court, the Supreme Judicial
Court granted leave to obtain further appellate review.

*Charles F. Choate* for the plaintiffs.

*James W. Perkins (Craig E. Stewart & Harold J. Carroll,*
Corporation Counsel, with him) for the defendants.

[1] The city of Boston, the collector-treasurer and the auditor of Boston.

ABRAMS, J.  The nine city councillors of Boston, in their official capacity, and individually, together with a tenth resident of Boston, brought this action as a ten-taxpayer action for declaratory and injunctive relief.  See G. L. c. 214, § 1; G. L. c. 231A, § 1; and G. L. c. 40, § 53.  The plaintiffs sought to restrain the defendants from spending city funds contrary to an ordinance passed by the city council which limited the number of employees in the office of the mayor and fixed their maximum salaries.  The defendants filed a motion to dismiss.  A Superior Court judge dismissed the complaint and entered a judgment declaring certain portions of the ordinance invalid (see note 2, *infra*).  See *Boston* v. *Massachusetts Bay Transp. Auth.*, 373 Mass. 819, 829 (1977).  The plaintiffs appealed, and the Appeals Court affirmed the judgment.  *Tierney* v. *Mayor of Boston*, 10 Mass. App. Ct. 404 (1980).  We granted further appellate review, and we now affirm.

The ordinance in question (City of Boston Code, Ordinances, Title 2, § 361 [1979]) provides that the mayor shall not, "unless authorized to do so by ordinance, appoint or incur expense to the city for more than thirty non-civil service persons connected with his office as administrative assistants, secretaries, stenographers, clerks, telephone operators or messengers,[2] no more than twelve of whom shall be administrative assistants."  Maximum levels of compensation are specified in the ordinance for each of these categories of employees.  The ordinance was passed by the

[2] The trial judge limited his order and judgment to those portions of the ordinance affecting these specifically enumerated positions.  Other provisions of the ordinance purport to abolish all other noncivil service positions connected with the mayor's office and provide that no new positions or compensation levels shall be established in the city agencies except by ordinance.  The judge found that the record was insufficient for a focused determination of the legal issues surrounding these latter provisions, and the judge allowed the plaintiff's subsequent motion to strike from its complaint the allegations relating to these provisions.  The judge's dismissal of the counts relating to the employees specifically listed in the ordinance, therefore, was a final judgment.

city council on March 28, 1979. The mayor vetoed the ordinance on April 9, 1979, but the council unanimously voted to pass the ordinance over the mayor's veto on April 18, 1979. St. 1948, c. 452, § 17D, inserted by St. 1951, c. 376, § 1. The ordinance, if valid, would have become effective on July 1, 1979. At all times since July 1, 1979, the mayor's office has continued to employ more than thirty employees at salaries higher than the maximum levels specified in the ordinance.

The plaintiffs assert that the ordinance is a valid enactment under the city council's general legislative power to make ordinances not inconsistent with the laws or Constitution of the Commonwealth. St. 1822, c. 110, § 15. Art. 2 of the Articles of Amendment to the Massachusetts Constitution, as amended by art. 89 (Home Rule Amendment). Since no statute expressly gives to the mayor the power to appoint his staff or to fix compensation of his employees, the council argues, the ordinance is not inconsistent with the laws of the Commonwealth. Further, the plaintiffs argue, the council as a legislative body has the power to fix salaries for certain classes of employees under G. L. c. 41, § 108A, and to create, reorganize or abolish any department of the city government under St. 1953, c. 473, § 1.

The defendants, on the other hand, argue that the executive powers of the mayor include the right to make staff appointments and to set compensation for the employees of the mayor's office within the limits of appropriations approved by the city council under St. 1909, c. 486, § 3, as amended through St. 1966, c. 642, § 10. These powers they claim arise from St. 1885, c. 266, § 6, and St. 1948, c. 452, § 11, as appearing in St. 1951, c. 376, § 1, which vest all executive powers in the mayor, and which separate the executive powers of the mayor from the legislative powers of the city council.

More specifically, the defendants assert that the power of appointment is implicit in St. 1909, c. 486, § 15, which provides, in relevant part, that "[t]he civil service laws shall not apply to the appointment of the mayor's secretaries, nor

of the stenographers, clerks, telephone operators and messengers connected with his [the mayor's] office, and the mayor may remove such appointees without a hearing and without making a statement of the cause for their removal." They conclude that the ordinance is inconsistent with the statute, and thus invalid. See generally 6 E. McQuillin Municipal Corporations § 21.34 (3d ed. 1980). See also *Milton* v. *Attorney Gen.*, 372 Mass. 694 (1977); *Bloom* v. *Worcester*, 363 Mass. 136 (1973). We believe that the defendants are correct and that the authority of the mayor to determine the number of staff persons employed by his office, and the salaries to be paid to these employees, is implicit in the city charter as a whole and most specifically in St. 1909, c. 486, § 15.

"[T]he scheme or framework of government is to be ascertained from all the provisions of the charter." *Fiske* v. *Worcester*, 219 Mass. 428, 429 (1914). Boston's form of city government, adopted by the voters of the city pursuant to St. 1948, c. 452, as amended by St. 1951, c. 376, § 1, is a "Plan A" or "strong mayor" type of government. The city charter is a series of State statutes and not a single code. Many of the statutes date back to 1822, when the Legislature passed the first city charter for Boston. St. 1822, c. 110. That charter created a government consisting of a mayor, a board of aldermen, and a common council. The mayor under this scheme had little power, even over the executive business of the city. In 1854, the charter was amended to give the mayor limited powers of appointment and veto of city council actions. St. 1854, c. 448, §§ 47, 49.

As the city grew, there was an increasing demand for efficiency in government and for a strong mayor. N. Matthews, The City Government of Boston 168 (1895). As a result, in 1885 the city charter was substantially revised. All executive powers were transferred to the mayor,[3] and the

---

[3] Statute 1885, c. 266, § 6, reads in pertinent part: "The executive powers of said city, and all the executive powers now vested in the board of aldermen . . . shall be and hereby are vested in the mayor . . . ."

city council was expressly forbidden from conducting any of the executive business of the city.[4] The charter was amended a number of times after 1885, each time strengthening the executive power of the mayor. See, e.g., St. 1909, c. 486; St. 1951, c. 376; St. 1953, c. 473.

The current plan provides that "[t]here shall be in the city a mayor who shall be the chief executive officer of the city, [and] a city council of nine members which shall be the legislative body of the city." St. 1948, c. 452, § 11, as appearing in St. 1951, c. 376, § 1. The city council may not "directly or indirectly . . . take part in the employment of labor, the making of contracts, or the purchase of materials, supplies or real estate; . . . nor in the conduct of the executive or administrative business of the city or county; nor in the appointment or removal of any city or county employee; nor in the expenditure of public money except such as may be necessary for the contingent and incidental expenses of the city council." St. 1948, c. 452, § 17G, inserted by St. 1951, c. 376, § 1.

The city council's authority is limited largely to a check on the mayor's executive function through the power of appropriation.[5] St. 1822, c. 110, § 15. All budgets and supplementary appropriation orders other than for school purposes, however, must originate with the mayor, who submits them to the city council. The council may reduce

---

[4] Statute 1885, c. 266, § 12, provides in part: "Neither the city council . . . nor any member or committee thereof . . . nor the board of aldermen . . . shall directly or indirectly take part in the employment of labor, the making of contracts, . . . or in the conduct of any of the executive or administrative business of the city . . . ."

[5] The plaintiffs argue that the power of appropriation is not sufficient to give the city council fiscal control over the mayor's office, as there are several ways the mayor is able to evade budget limitations. The issue of the legality of the transfer of funds and other actions of the mayor is not before us. The short answer to the plaintiffs is that this court cannot amend the city charter. That power rests solely in the Legislature. See, e.g., *Johnson* v. *Deerfield*, 25 F. Supp. 918, 921 (D. Mass.), aff'd, 306 U.S. 621 (1939). Neither will we rule on the wisdom of charter provisions. See *Corning Glass Works* v. *Ann & Hope, Inc.*, 363 Mass. 409, 420 (1973).

or reject any item, but may not increase or add items. St. 1909, c. 486, § 3, as appearing in St. 1941, c. 604, § 1. The mayor has veto powers over all orders, ordinances, resolutions and votes of the city council authorizing loans or appropriating money. St. 1948, c. 452, § 17D, inserted by St. 1951, c. 376, § 1.

Under the city charter the mayor is head of the executive branch of city government. As such, the mayor is charged with the administrative duties of city government, including the supervision of subordinate officers in the discharge of their duties (St. 1885, c. 266, §§ 6, 7), and the exercise of numerous powers of appointment (St. 1909, c. 486, § 9), since the power of appointment is, by its nature, an executive power. *Attorney Gen.* v. *Varnum*, 167 Mass. 477, 480 (1897). *Murphy* v. *Webster*, 131 Mass. 482, 488 (1881). The mayor is charged with the duty "to secure the honest, efficient and economical conduct of the entire executive and administrative business of the city." St. 1885, c. 266, § 6. These grants of authority and responsibility to the mayor necessarily imply grants of implicit power to carry out the authority expressly conferred. In recognition of the mayor's need for staffing flexibility, the charter provides that certain members of the mayor's staff are exempt from civil service laws, and the staff members serve at his pleasure. St. 1909, c. 486, § 15. Incident to the mayor's power to hire and fire his personal staff is the power to set their compensation. See *Whalen* v. *First Dist. Court of E. Middlesex*, 295 Mass. 305, 310 (1936); *Smith* v. *Lowell*, 190 Mass. 332, 333 (1906); *Faulkner* v. *Sisson*, 183 Mass. 524, 526 (1903).

The charter as a whole, and more specifically St. 1909, c. 486, § 15, evidences a legislative intent to reserve to the mayor the discretion to determine the size and salary level of his own staff. Thus we conclude that the ordinance at issue is an invalid and unenforceable encroachment on that power.

The city council also relies on an argument under G. L. c. 41, § 108A, which permits them to establish a classification and salary plan for city employees. General Laws

c. 41, § 108A, however, does not deprive the mayor of his authority to set compensation for his own staff, and we do not read § 108A as enabling the city council to establish a classification plan in derogation of other provisions of the city charter. A "sweeping determination of municipal policy as to the scale of salaries to be paid to all municipal employees or to all employees of a considerable department of the municipal government" is a legislative function, but the appointment of single officers or employees is reserved to the executive. *Gorman* v. *Peabody*, 312 Mass. 560, 563-565 (1942).

The plaintiffs argue that the mayor's power to hire subordinates derives not from St. 1909, c. 486, § 15, but from St. 1885, c. 266, § 5, which gives all "officers and boards" the power to appoint subordinates "for such terms of service . . . as are or may be fixed by law or ordinance." In 1890 that section was repealed as part of a new statutory scheme relating to the appointment and removal of officers and subordinates. St. 1890, c. 418. The language quoted by the plaintiffs making subordinates' terms of service subject to control by the city council was not included in the 1890 enactment. Instead, officers and department heads were given the power to remove their subordinates. St. 1890, c. 418, § 3.

Lastly, the plaintiffs assert that the ordinance in question is an exercise of their authority under St. 1909, c. 486, § 5, as appearing in St. 1953, c. 473, § 1, which provides that "[t]he city council with the approval of the mayor may . . . make by-laws or ordinances . . . (*a*) to create a new department or agency; (*b*) to abolish, in whole or in part, any department or agency; (*c*) to reorganize, in whole or in part, any department or department head or any agency or agency head."[6] We believe that the ordinance does not fall within the authority granted by this provision. The mayor's

---

[6] This position is inconsistent with that taken by the plaintiffs in their brief to the Appeals Court, where they contend that St. 1953, c. 473, § 1, is inapplicable.

office is not a "department or agency" subject to reorganization by the city council; it is a separate branch of city government.[7]

*Judgment affirmed.*

---

[7] Moreover, St. 1909, c. 486, § 5, as appearing in St. 1953, c. 473, § 1, also provides that "[e]very department or agency head created by, or resulting from a reorganization effected by, a by-law or ordinance made under this section shall, unless ex officio, be appointed by the mayor," suggesting that the Legislature did not intend the mayor's office to be a "department or agency" within the meaning of the statute.