Burnes, J.
Plaintiff, the Boston City Council, by James M. Kelly, City Council President (the “City Council”), brought this action against Thomas M. Menino, in his capacity as the Mayor of the City of-Boston (“Mayor Menino”), alleging that Mayor Menino has unlawfully interfered with the operation of the legislative branch, and has thereby prevented the City Council from performing its lawful functions, all to the detriment of the people of the City of Boston. The City Council now moves for a preliminary injunction, seeking to restrain Mayor Menino from preventing the City Council from adding a paid attorney to its staff to act as Counsel to the City Council. Mayor Menino opposes this motion on the grounds that: (1) the City Council fails to demonstrate that it is likely to succeed on the merits; (2) that the City Council will suffer no irreparable harm if it is not granted equitable relief; and (3) the relief which the City Council seeks is adverse to the best interest of the public. For the reasons set forth below, the City Council’s Motion for a Preliminary Injunction is DENIED.
BACKGROUND
On or about November 17, 1999, the City Council considered a proposal, offered by City Council President James M. Kelly (“City Council President”), to create a permanent position of Counsel to the City Council (the “November Order”). The November Order assigned duties to the office of Counsel to the City Council including providing a variety of legislative, research, and advisory services to both individual councilors and the City Council as a body. The duties of the Counsel to the City Council also include filing law suits on behalf of the City Council and representing it in litigation, in accordance with a majority vote of the City Council.
On or about December 1, 1999, the City Council considered and passed the November Order creating the position of Counsel to the City Council. On or *195 about December 14, 1999, Corporation Counsel sent a letter to the City Council President advising him that, based upon the Boston City Charter (the "City Charter”), the City of Boston Code of Ordinances, and governing case law, the City Council may not establish an office of Counsel for the City Council without the approval of Mayor Menino.
On or about December 15, 1999, the City Council passed an Order appointing Shawn Murphy as Counsel to the City Council, effective January 1, 2000. In addition, the City Council also passed an Ordinance Regarding City Council Personnel: Salaries (“Personnel Salary Ordinance”), which sought to establish the permanent position of Counsel to the City Council and salary ranges for that position. The Personnel Salary Ordinance proposed to amend City of Boston Code, Ordinances, Chapter III, §2-8.3 (“CBC Ord. §2-8.3”) by, among other things, adding the position of Counsel to the City Council.
Thereafter, the City Council presented the Personnel Salary Ordinance to Mayor Menino for his review. On or about January 3, 2000, Mayor Menino vetoed the Personnel Salary Ordinance, under the City Charter, St. 1909, c. 486, §5, as appearing in St. 1953, c. 473, §1 (referred to as “Section 17B”), and returned it to the City Council unsigned and disapproved. The City Council asserts that the Personnel Salary Ordinance is a valid enactment under the City Council’s general legislative power to make ordinances not inconsistent with the laws or the Constitution of the Commonwealth and valid under the City Charter, St. 1822, c. 110, §15, Art. 2 of the Articles of Amendment of the Massachusetts Constitution, as amended by Art. 89 (Home Rule Amendment); St. 1948, c. 452, §17D, inserted by St. 1951, c. 376, §1 (referred to as “Section 17D”). The City Council alleges that a Counsel to the City Council is necessary with the advent of evolving complex legal issues and that the November Order and the Personnel Salary Ordinance relate to internal affairs of the City Council, as to which Mayor Menino has no say.
Mayor Menino maintains that the executive powers of the Mayor include the right to approve the City Council’s establishment of “offices.” The November Order establishing the position of Counsel to the City Council was never presented to him for approval and the subsequent Personnel Salary Ordinance establishing and setting the salary for that position was vetoed by the Mayor. Under Section 17D, says the Mayor, the Personnel Salary Ordinance is then void and the City Council has no authority to take any further action.
DISCUSSION
A. The City of Boston’s Governmental Framework
“The Boston City Charter is a patchwork of special laws enacted over the years by the Legislature.” Edwards v. City of Boston, 408 Mass. 643, 649 (1990). “The scheme or framework of government is to be ascertained from all the provisions of the charter.” City Council of Boston v. Mayor of Boston, 383 Mass. 716, 719 (1981), quoting Fiske v. Worcester, 219 Mass. 428, 429 (1914). Boston’s form of city government, adopted by the voters of the City pursuant to St. 1948, c. 452, as amended by St. 1951, c. 376, §1, is a “Plan A” or “Strong Mayor” type of government, under which the City Council has relatively limited powers.[3] City Council of Boston v. City of Boston, 386 Mass. 171 (1982).
The original City Charter, dating back to 1822, created a government consisting of a Mayor, a Board of Aldermen, and a Common Council. St. 1822, c. 110. In 1854, the City Charter was amended to give the Mayor limited powers of appointment and veto of City Council actions. St. 1854, c. 448, §§47, 49. As the City grew, there was an increasing demand for efficiency in government and for a strong Mayor. To that end, in 1855, the City Charter was substantially revised. All executive powers were transferred to the Mayor, and the City Council was expressly forbidden from conducting any of the executive business of the City. St. 1885, c. 266, §§6, 12. Thereafter, the City Charter was amended a number of times, each time strengthening the executive power of the Mayor. See, e.g., St. 1909, c. 486; St. 1951, c. 376; St. 1953, c. 473.
The current plan provides that' “(t]here shall be in the city a mayor who shall be the chief executive officer of the city, [and] a city council of nine members which shall be the legislative body of the city.” St. 1948, c. 452, §11, as appearing in St. 1951, c. 376, §1. Hence, the City Council’s authority is “limited largely to a check on the mayor’s executive function through the power of appropriation.” City Council of Boston v. Mayor of Boston, 383 Mass. at 720; St. 1822, c. 110, §15.
The city council may not “directly or indirectly . . . take part in the employment of labor, the making of contracts, or the purchase of materials, supplies, or real estate; . . . nor in the conduct of the executive or administrative business of the city or county; nor in the appointment or removal of any city or county employee; nor in the expenditure of public money except such as may be necessary for the contingent and incidental expenses of the city council.” St. 1948, c. 452, §17G, inserted by St. 1951, c. 376, §1.
All budgets and supplementary appropriation orders other than for school purposes, however, must originate with the mayor, who submits them to the city council. The council may reduce or reject any item but may not increase or add items. St. 1909, c. 486, §3, as appearing in St. 1941, c. 604, §1. The mayor has veto powers over all orders, ordinances, resolutions and votes of the city council authorizing loans or appropriating money.
See City Council of Boston v. Mayor of Boston, 383 Mass, at 720.
*196 B. Preliminary Injunction Standard
To obtain preliminary injunctive relief, the City Council must show: (1) that it has a reasonable likelihood of success on the merits; (2) that it will suffer irreparable harm if the injunction is not granted; and (3) that the harm it will suffer if the injunction is denied outweighs the injury Mayor Menino will suffer should the injunction issue. Callahan & Sons, Inc. v. City of Malden, 430 Mass. 124, 131 (1999); Packaging Indus. Group, Inc. v. Cheney, 380 Mass. 609, 616-17 (1980).
An injunction may issue properly if the Court concludes that the risk of irreparable harm to a plaintiff, in light of its chances of success on its claim, outweighs the defendant’s probable harm and likelihood of prevailing on the merits of the case. Commonwealth v. Mass. CRINC, 392 Mass. 79, 87-88 (1984). Where the dispute does not involve private parties, the Court “is required to determine that the requested order promotes the public interest, or, alternatively, that the equitable relief will not adversely affect the public.” Id. Thus, the Court should also consider the risk of harm to the public interest. LeClair v. Town of Norwell, 430 Mass. 328, 337 (1999); Biotti v. Board of Selectmen of Manchester, 25 Mass.App.Ct. 637, 640 (1988). In a case such as this where there are interests of differing parts of the government, the critical inquiry is whether the actions of one interferes with the functions of another. Boston Gas Co. v. Dept. of Public Utilities, 387 Mass. 531, 541 (1982).
C. Likelihood of Success on the Merits
The principle legal questions that the Court must evaluate in determining whether the City Council is likely to succeed on the merits of its claim are threefold: (1) is the position of Counsel to the City Council “internal,” such that approval by the Mayor is not required for its creation under Section 17D; (2) is the position of Counsel to the City Council an “office,” such that its creation requires prior approval of the Mayor under Section 17B; and (3) does the action of the City Council effectuate a de facto “reorganization” of Corporation Counsel’s office?
1. Is the Position of Counsel to the City Council “Internal?”
St. 1948, c. 452, §17D, inserted by St. St. 1951, c. 376, §1 (“Section 17D”), addresses generally the enactment of ordinances in the City. Section 17D reads, in pertinent part:
Every order, ordinance, resolution and vote of the city council (except special municipal election orders adopted under section thirteen, botes relating to the internal affairs of said council, resolutions not affecting legal rights, votes electing officials, and votes confirming appointments by the mayor) shall be presented to the mayor for his approval. .. Every order, ordinance, resolution and vote authorizing a loan or appropriating money or accepting a statute involving the expenditure of money, which is so returned to the city council, shall be void, and no further action shall be taken thereon; but the city council shall proceed forthwith to reconsider every other order, ordinance, resolution and vote so returned and if, after such reconsideration two thirds of all the city councilors vote to pass it notwithstanding the disapproval of the mayor, it shall then be in force, but no such vote shall be taken before the seventh day after the city council has entered the objections at large on its records.
(Emphasis added.) Hence, Section 17D “gives the mayor a conclusive veto over loan authorizations, appropriations, and statutes involving the expenditure of money.” City Council of Boston v. Mayor of Boston, 24 Mass.App.Ct. at 668.
Since 1881, the Law Department, under the charge of Corporation Counsel, has been the exclusive legal counsel for all City departments[4] and officials, including the City’s legislative department[5] — the City Council. See City of Boston Municipal Register for 1990-1991, p. 105. No statute or ordinance expressly authorizes the City Council to include in its department an office of counsel to the City Council or to permanently employ its own attorney.
City of Boston Code, Ordinance, Chapter V, §5-8.1 (“CBC Ord. §5-8.1") establishes the Law Department under charge of Corporation Counsel. CBC Ord. §5-8.1 states, in pertinent part:
The Law Department shall be under the charge of the Corporation Counsel, who shall furnish opinions on the law of any subject or question that may be submitted to him by the Mayor or the City Council and on any subject or question relating to the discharge of their or his official duties that may be submitted to him by the School Committee, by any Committee of the City Council, or by four (4) members of the City Council, or by any Officer in charge of a Department of the City government [provided, however, that in the event the interests of the Mayor and the Council appear to the Council to be divergent or in conflict, the Council may have the benefit of the services of special counsel];[6] shall, on application, advise any officer or employee of the City on any question of law connected with the discharge of his official duties; shall, subject to the direction of the Mayor, or of any Committee of the City Council having charge of matters before the general court of the Commonwealth, appear by himself or assistants as Counsel for the City before the general court or before any committee thereof, when the interest or welfare of the City is directly or indirectly affected; shall draft and approve the form of all written contracts; shall by himself or by the City conveyancers examine all titles to real property which the City is to acquire, and furnish without charge all deeds or other legal papers necessary for the transfer of property to or from the City *197 which the City is required, by law, or has been accustomed, to so furnish: and shall audit all bills incurred by the Department; shall, subject to the direction of the Mayor, institute any suit or proceeding in behalf of the City which he shall deemed the interest of the City requires; shall by himself or by his assistants in the Law Department appear as Counsel in all suits, actions or prosecutions which may involve the rights or interest of the City, and defend the officers of the City in suits against them for their official actions, or for the performance of their official duties, or when any estate, right, privilege, interest, ordinance, act, or direction of the City is brought in question; may take such steps, and incur such expenses for the prosecution and defense of suits as he deems necessary; shall examine into the settlement of a claim when requested to do so by the Mayor or the head of any Department, and if he deems such settlement advantageous of the City, shall approve the same and may settle any suit against the City.
The City Council argues that it may establish positions on its staff without the Mayor’s approval. Establishing such positions relates to the internal affairs of the City Council and need not, therefore, says the City Council, be presented to the Mayor for approval under Section 17D of the City Charter. The Counsel to the City Council is such a position, says the City Council. Further, the City Council maintains that the hiring of staff for the City Council is within the exercise of and incidental to an independent municipal power conducting its daily business.
The November Order outlines the internal and external duties for the position of Counsel to the Council. Specifically, the November Order provides that the Counsel for the City Council shall perform the following duties:
Legislation. Answer questions about the form, substance and legality of legislation. Review and comment upon draft legislation prepared by a councilor’s staff or others. Draft legislation as requested based on a detailed outline provided by a councilor or his/her staff.
Resolutions and orders calling for a hearing. Upon request, edit for completeness and form, city council resolutions and orders calling for hearings when requested to do so.
Research and advice. The Counsel for the City Council will research and provide advice and/or legal analysis regarding matters that relate to Council business . . . [T]his may include internal policy matters of the Council, such as conflict of interest issues, political activity restrictions, and issues relating to the Council’s employees. Serve as legal counsel in executive sessions, or in meetings of members of the City Council. Analyze administration proposal, programs, bills and reports submitted to the City Council, and to prepare executive summaries as requested. Analyze and prepare executive summaries of state and federal legislation of interest to the City Council. To familiarize himself/herself with the laws of Massachusetts and the federal government that may apply to the city of Boston and/or the Boston City Council, sufficient to be able to brief and advise the City Council of its legal rights in areas such as the budget and policy making powers, contracting authority, open meeting and public disclosure laws . . . Counsel shall provide written legal memoranda upon a majority vote of the City Council, or upon the request of the President of the City Council, to inform the City Council of a legal matter that may be of interest to the councilors.
Hearings and Committee reports. At the request of a committee Chair, the Counsel for the City Council may question witnesses at the beginning of committee hearings to establish the necessary legal framework for the hearing. The Counsel for the City Council will note specific answers that may be important or necessary for the committee’s or city council’s deliberations in the future, and prepare for the committee chair a permanent report of the results of such questions. At the request of a committee chair, work with the Central Staff committee liaison to ensure proper language for committee reports.
External Activities. On a majority vote of the City Council, the Counsel for the City Council shall protect the interests of the City Council in all legal proceedings in which the Cily Council may have standing and an interest, and shall represent the city council in litigation. The Counsel for the City Council, may, upon a majority vote of the City Council, seek outside assistance on any matter that is of interest to the City Council. Work with Corporation Counsel’s office to amicably resolve matters, of mutual concern.
Library. Establish and maintain a working electronic and paper reference library consisting of various sources, including internal legal memorandum on various issues that may involve the city council and its authority, and on other issues such as vagrancy, zoning laws, youth gangs, public accommodation laws, condominium conversion, needle exchange, gun laws, etc.
Miscellaneous. From time to time, submit to the President of the City Council for consideration proposed changes and corrections in the various laws that affect the City, as the Counsel deems necessary or advisable.
The duties of Corporation Counsel and those proposed for the Counsel to the City Council overlap almost completely, for example, rendering advice and furnishing opinions of law to the City Council; reviewing and editing proposed legislation; and protecting the interests of and representing the City Council in *198 litigation. See the November Order and CBC Ord. §5-8.1. With the exception, possibly, of editing resolutions, a job which may not even need a lawyer but certainly could be done by Corporation Counsel, and establishing a library, which may duplicate what Corporation Counsel already has, the Counsel to the City Council’s duties are all currently the responsibility of Corporation Counsel.
In Mayor of New Bedford v. City Council of New Bedford, 13 Mass.App.Ct. 251, 255 (1982), the Supreme Judicial Court recognized the need of the two branches of city government for staffing flexibility. It found exempt from civil service the positions of “administrative assistants, secretaries, stenographers, clerks, telephone operators and messengers connected with the offices of city council, mayors, city managers, town managers and selectmen.” The City of New Bedford is a Plan B form of city government, in which the powers of the City Council and the Mayor are more balanced than in a Plan A form, such as Boston’s form. Plan A forms of city government, and especially Boston’s Plan A form of city government, provide for a “strong mayor.” City Council of Boston v. City of Boston, 386 Mass. 171 (1982). Even in Mayor of New Bedford, the Supreme Judicial Court limited the City Council to hiring, on its own, what is essentially support staff. Surely the Court would not give more power to a City Council in a Plan A than it has in a Plan B form of city government.
The position of Counsel to the City Council is not limited to assisting the City Council in its performance of legislative functions. The functions described in the November Order, e.g., representing the City Council in all legal proceedings, drafting and submitting proposed changes in various laws affecting the City, and examination of witnesses at hearings, are not merely ministerial and incidental to the legislative powers and functions of the City Council.[7] See City Council of Boston v. Mayor of Boston, 383 Mass. at 720; see also King v. Mayor of Quincy, 270 Mass. 185, 187 (1930).
It follows that under the City Charter, power to appoint Counsel to the City Council, a position that functions not merely as an “internal” one, is subject to the approval of the Mayor. Thus, the City Council is not likely to succeed in showing that the position of Counsel to the City Council is internal to the City Council. King v. Mayor of Quincy, 270 Mass, at 188.
2. Is the Position of Counsel to the City Council an “Office?”
The City Council contends that there is a reasonable likelihood of succeeding in its action because Mayor Menino, in denying the Personnel Salary Ordinance, improperly relied on Section 17B rather than Section 17D of the City Charter. The City Council is incorrect.
City Charter, St. 1909, c. 486, §5, as appearing in St. 1953, c. 473, §1 (“Section 17B”), applies to the creation of offices and reads, in pertinent part:
The city council may, with the approval of the mayor, from time to time establish such offices, other than that of the clerk, as it may deem necessary for the conduct of its affairs and at such salaries as it may determine, and abolish such offices or alter such salaries; and without such approved may fill the offices thus established and remove the incumbents at pleasure.
(Emphasis added.) See City Council of Boston v. Mayor of Boston, 24 Mass.App.Ct. at 665-69. Thus, Section 17B prevents the City Council from altering the makeup of city government through the creation of an “office” without the affirmative approval of Mayor Menino.
The term “office” is not defined within the City Charter. Black's Law Dictionary, 976-77 (5th ed. 1979) defines “office” as “an assigned duty,” or “employment on behalf of the government in any station or public trust, not merely transient, occasional, or incidental,” and lists “post,” “appointment,” “situation,” “place,” and “position” as-synonyms. The primary meaning of “office,” given in Webster’s New Collegiate Dictionary, 790 (G.&C. Merriam Co., 1981), is a “special duty, charge or position conferred by an exercise of governmental authority and for a public purpose.” Additionally, G.L.c. 43, the statute establishing the various plans for municipal governments in Massachusetts, defines “officer” as “any person or persons in charge of any department or division of the city.” In fact, the Personnel Salary Ordinance itself lists the Counsel to the City Council as one of the subordinate “officers” for whom the City Council is seeking approval of a salary range.
The City Council argues that the position of Counsel to the City Council is a staff position in the legislative branch of government, subordinate to the City Council, and thus is outside the reach of the executive branch. Further, the City Council maintains that the position of Counsel to the City Council is not the head of a department and that the absolute veto power contained in Section 17B only applies to the establishment of a new head of a department or division of the City not to hiring internal staff for a branch of City government.
Mayor Menino argues that it has been the City Council’s past practice to follow the procedures of Section 17B when it established and abolished various offices for the conduct of its affairs, including but not limited to the positions of Staff Director, Budget Director, Chief of Research, Assistant Research Director, Business Manager, Legislative Assistant, City Messenger, and Receptionist.
In the absence of legislative authority, it is settled that a department of a city or town has no authority *199 to employ counsel. Board of Public Works of Wellesley v. Board of Selectmen of Wellesley, 377 Mass. 621, 624-25 (1979); O’Reilly v. Town of Scituate, 328 Mass. 154 (1951). G.L.c. 43 does not expressly grant to the City Council the authority to appoint other employees as may be necessary for the proper conduct of its business. Mayor of New Bedford v. City Council of New Bedford, 13 Mass.App.Ct. at 254. Section 17B forbids the City Council from establishing an “office” without the approval of the Mayor.
It follows logically that a salary cannot be established for an office which has yet to be created. The City Council never submitted the November Order establishing the office of Counsel to the City Council to Mayor Menino for approval. Nevertheless, it submitted, for the Mayor’s approval, the Personnel Salary Ordinance establishing and setting the salary for the person who would occupy the “office” of Counsel to the City Council.
3. Does the Action of the City Council Effectuate a defacto “Reorganization” of Corporation Counsel’s Office?
City of Boston Code, Ordinance, Chapter V, §5-8.1 (“CBC Ord. §5-8.1”), establishes the Law Department under the charge of Corporation Counsel, who is to counsel and represent all City departments, including the City Council. As discussed above, with the exceptions noted,[8] since 1881, the Law Department, under the charge of Corporation Counsel, has been the exclusive legal counsel for all City departments and officials, including the City’s legislative department — the City Council. CBC Ord. §5-8.1 expressly provides that the Law Department is charged with the duty to “furnish opinions on the law” to the City Council.
The City Council argues that it should have the power to appoint its own attorney separate from and in addition to Corporation Counsel. It tries to differentiate between the functions of Counsel to the City Council and Corporation Counsel by arguing that the primary function of the Counsel to the City Council is to advise the legislative branch and, thus, is internal to that branch.
Such a distinction cannot be made. The City Charter, as outlined above, mandates a governmental structure organized by departments. The creation of the permanent position or office of Counsel to the City Council disrupts this structure. It puts part of the functions of the Law Department in the legislative department and is not lawful. See City Council of Boston v. Mayor of Boston, 383 Mass, at 716. See also City Council of Boston v. Mayor of Boston, 24 Mass.App.Ct. at 663.
In City Council of Boston v. Mayor of Boston, 24 Mass.App.Ct. 663 (1987), twelve of the thirteen members of the City Council sought to override, under Section 17D of the City Charter, the Mayor’s vetoofordinancesabolishingtheinspectionalservices department and establishing in its place a building department with inspection, zoning, engineering, enforcement, and administrative divisions, aswellas the office of ombudsman. The Supreme Judicial Court held that the City Council and the Mayor must act together concerning reorganization of city agencies and departments and that the City Council could not use its limited authority under Section 17D to override a reorganization measure when another section of the CityCharterspecificallyrequiredtheMayor’sapproval of any reorganization. Construing the City Charter provision that “the city council with the approval of the mayor ...” may reorganize the various city agencies and departments, the Supreme Judicial Court stated that “the plain words of this statute require mayoral approval of an ordinance touching on reorganization of city departments.” City Council of Boston v. Mayor of Boston, 24 Mass.App.Ct. at 665.
Hence, the City Council is not likely to succeed on the merits of this action, as the establishment of the office of Counsel to the City Council would violate the City Charter’s reorganization provisions by altering the powers and duties of the Law Department without the approval of the Mayor. See City Council of Boston v. Mayor of Boston, 24 Mass.App.Ct. at 363.
D. Irreparable Harm
Irreparable harm is a loss of rights that cannot be vindicated, should the party seeking an injunction prevail after a full hearing on the merits. Planned Parenthood League of Mass., Inc. v. Operation Rescue, 406 Mass. 701, 710 (1990). The City Council argues that there presently exists a threat of serious harm to the orderly conduct of the business of the City that will affect the public’s safety and welfare and the general governance of the City. The City Council, however, fails to offer any evidence of an interest that could suffer immediate and irreparable harm.
As previously discussed, the City Council’s authority is limited largely to a check on the mayor’s executive function through the power of appropriation. Given the fact that the City Council has never had an office of Counsel to the City Council, the Court fails to see how the public’s business will fall into disorder if the City Council is forbidden from having a Counsel to the City Council now.
The City Council is able to obtain legal counsel at any time it deems necessary. The Supreme Judicial Court, in various opinions, has offered options to municipal powers for retaining counsel when necessary, i.e., the City Council may seek the advice of Corporation Counsel; it may seek approval of the Mayor for permission to engage independent counsel to carry on litigation; and/or members of the City Council, as individuals with a particular interest, may retain their own counsel. See City Council of Boston v. Mayor of Boston, 386 Mass, at 171; Board *200 of Public Works of Wellesley v. Board of Selectmen of Wellesley, 377 Mass, at 630. In addition, Corporation Counsel would have to recuse itself from representing the City Council if there were a conflict between it and the Mayor. Mass.R.Prof.C. 1.7, 426 Mass. 1330 (1998).
Generally speaking, injunctions are appropriate, all three conditions having been met, to preserve the status quo. Petricca Construction Co. v. Commonwealth, 37 Mass.App.Ct. 392, 400 (1994). What the City Council seeks to do here is to change the status quo. An order effecting such a change, at this point, would not be proper, particularly where the City Council is unlikely, ultimately, to succeed on the merits.
E.Balance of the Harm and Public Interest
In evaluating the appropriateness of a preliminary injunction here, the Court must consider how Mayor Menino’s veto of the Personnel Salary Ordinance affects the public interest. LeClair v. Town of Norwell, 430 Mass, at 337. The Court agrees that implicit in the City Charter provisions and recognized in G.L.c. 43 is the authority of the City Council to make such appointments as are necessary to carry out its legislative responsibilities. This power, however, is subject to such appropriation and other powers as maybe held by the Mayor. Mayor of New Bedford v. City Council of New Bedford, 13 Mass.App.Ct. at 256. Therefore, the Personnel Salary Ordinance is likely to be an invalid and unenforceable encroachment on the Mayor’s power. City Council of Boston v. Mayor of Boston, 383 Mass. at 721. So construed, the actions of Mayor Menino did not abridge nor impair the legislative power of the City. Additionally, the establishment of such a position creates a serious potential for confusion and contradiction in the direction of the City’s litigation, as well as the potential for disruption of the City’s business in the event that the advice rendered differs between each attorney. Board of Public Works of Wellesley v. Board of Selectmen of Wellesley, 377 Mass, at 624.
When balancing the equities, it is apparent that the public interest would not be served by issuing an injunction. The City Council is not likely to prevail in this litigation; there is no risk of irreparable injury to the City Council from denying the preliminary injunction. The status quo will be preserved. On the other hand, the risk of irreparable harm to Mayor Menino from granting the requested relief is potentially substantial. See Callahan & Sons, Inc. v. City of Malden, 430 Mass, at 131.
F.Constitutional Considerations
The City Council argues that the concept of “separation of powers” found in Article 30 of the Massachusetts Constitution, as well as the doctrine of implied powers found in Article 1, §8 of the United States Constitution, applies to this case. It is not necessary to decide the allocation of powers under Article 30 of the Massachusetts Constitution, because the Supreme Judicial Court has already decided that issue. City Council of Boston v. Mayor of Boston, 383 Mass, at 720.
G.Standing
Mayor Menino argues that the City Council lacks standing to bring this action because the complaint failed to contain averments that a duly constituted meeting of the City Council was held, at which a majority of the City Council voted to delegate authority to Council President to initiate this suit. Alphen v. Shadman, 330 Mass. 608, 609 (1953); Kenney v. McDonough, 315 Mass. 689, 694 (1944). If there was a standing issue, it has been cured by the City Council in subsequent papers filed with the Court.
ORDER
For the foregoing reasons, it is hereby ORDERED that the City Council’s motion for preliminary injunction is DENIED.

 On November 8, 1949, Boston voters adopted a Plan A charter (“Plan A”). However, Plan A as adopted by the voters, is not the same Plan A that is described in G.L.c. 43, although there are some similarities. Rather, Plan A, as subsequently amended, is a legislative charter specifically tailored to the City of Boston. City Council of Boston v. Mayor of Boston, 24 Mass.App.Ct. 663, 669 (1987), further appellate review denied, 401 Mass. 1101 (1987).

 On occasion, the Legislature authorizes a particular municipal board or department to retain separate counsel. See, e.g., G.L.c. 71, §37E (school committees); G.L.c. 71, §16{j) (regional school district).

 The two basic departments of a municipality are the legislative and the executive. King v. Mayor of Quincy, 270 Mass. 185, 188 (1930). See also Daly v. Mayor of Medford, 241 Mass. 336, 338(1922) (the mayor is head of the executive department; the board of aldermen is the legislative department).

 Mayor Menino maintains that the bracketed passage, added by a 1979 City Council reorganization amendment that was vetoed by the Mayor, is null and void under the holding in City Council of Boston v. Mayor of Boston, 24 Mass.App.Ct. at 669-70, although the City Clerk continues to publish it in the Ordinances of the City of Boston Code. The City Council maintains that although the Mayor did veto the ordinance amending §5-8.1, that veto was overridden by the City Council in May 1979 and such override has never been challenged by the Mayor’s office. Ultimately, the Court notes that nothing in this litigation turns on the interpretation of this portion of CBC Ord. §5-8.1.

 The City Council may not, directly or indirectly, take part in the “expenditure of public money except such as may be necessaiy for the contingent and incidental expenses of the city council.” City Council of Boston v. Mayor of Boston, 383 Mass, at 720.

 See Footnote 4.